Edward E. ROTENBERRY and Jolyne M. Rotenberry, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 87–4389.

United States Court of Appeals, Fifth Circuit.

June 16, 1988.

Thomas E. Redding, Vicki L. Gilbert, Redding & Associates, Houston, Tex., petitioners-appellants.

Howard M. Soloman, William F. Nelson, Chief Counsel, I.R.S., Michael L. Paup, Chief Appellate Section, Glenn L. Archer,

---

Jr., Asst. Atty. Gen., Michael C. Durney, Robert A. Bernstein, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

The Tax Court dismissed the petition of Edward E. Rotenberry and Jolyne M. Rotenberry on the grounds that it was filed untimely. Concluding that the Tax Court erred in its interpretation and application of the controlling Treasury regulations, we reverse and remand.

### Background

On September 24, 1985, the Internal Revenue Service mailed to the Rotenberrys notices of income tax deficiencies for the years 1978 through 1981. Ninety days later, Monday, December 23, 1985, the Rotenberrys mailed the subject petition to the Tax Court, challenging and seeking a review of the IRS assessments. The packet containing the petition was stamped by a private postage meter and was posted by certified mail, return receipt requested, from Houston, Texas around 6:00 p.m. Because of a delay in the mails the petition was not delivered to the Tax Court until Tuesday, December 31, 1985, eight days after the mailing, and 98 days after the notices of deficiency.

The Tax Court accepted the petition and notified the IRS which moved for dismissal, urging a lack of jurisdiction because the petition had not been filed timely in the manner prescribed by the applicable Treasury regulation. After an evidentiary hearing on the motion a Special Trial Judge agreed with the IRS and ordered the petition dismissed. The Tax Court adopted the findings, conclusions, and order of the Special Trial Judge and dismissed the Rotenberrys' petition for lack of jurisdiction. The Rotenberrys appeal, contending that the Tax Court made clearly erroneous findings of fact and errors of law, and, further, that the controlling Treasury regulation is invalid.

### Analysis

One of the principal, if not the primary, reasons Congress created the predecessor of the Tax Court, was to provide the taxpayer with a means of avoiding the hardship inherent in the requirement that the taxpayer first pay the claimed additional tax before seeking a judicial determination of the assessment.[1] *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). The taxpayer who wishes to challenge an assessment before payment may do so by invoking the jurisdiction of the Tax Court. This is done by the filing of a petition for review within 90 days of the mailing of the notice of deficiency.

The 90-day period is jurisdictional, but the requirement is not absolute. A petition filed after the 90-day period is considered timely filed if it is mailed, properly addressed, before expiration of the period. Congress declared that in such an instance the date of mailing is deemed to be the date of filing. 26 U.S.C. § 7502(a). The advent of private postal meters introduced an uncertainty and a difficulty. Recognizing the

---

1. Congress created the Board of Tax Appeals in 1924. 43 Stat. 336. The House Committee Report explained the purpose of the Board:

    The committee recommends the establishment of a Board of Tax Appeals to which a taxpayer may appeal prior to the payment of an additional assessment of income, excess-profits, war-profits, or estate taxes. Although a taxpayer may, after payment of his tax, bring suit for the recovery thereof ... [t]he right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment. The payment of a large additional tax on income received several years previous ... sometimes forces taxpayers into bankruptcy, and often causes great financial hardship and sacrifice. These results are not remedied by permitting the taxpayers to sue for the recovery of the tax after this payment. He is entitled to an appeal and to a determination of his liability for the tax prior to its payment. H.R.Rep. No. 179, 68th Cong., 1st Sess. 7. *See also*, S.Rep. No. 398, 68th Cong., 1st Sess. 8.

potential for mischief[2] or innocent error in the setting of the date with privately metered mail, a potential either greatly attenuated or non-existent in mail postmarked by the postal service, but realizing the value of the private postal meters and not wishing to discourage their use, Congress permitted their use, but only pursuant to protective regulations. 26 U.S.C. § 7502(b).[3]

The Secretary of the Treasury adopted regulations pursuant to this congressional directive. Of particular significance to the disposition of this appeal is the Treasury Regulation on Procedure and Administration, 29 C.F.R. § 301.7502–1, relating to the timely filing in the instance of the mailing of privately metered mail. The regulation provides in pertinent part:

(c) *Mailing requirements.*—(1) Section 7502 is not applicable unless the document is mailed in accordance with the following requirements:

\* \* \* \* \* \*

(iii)(a) If the postmark on the envelope or wrapper is made by the United States Post Office, such postmark must bear a date on or before the last date, or the last day of the period, prescribed for filing the document. . . .

(b) If the postmark on the envelope or wrapper is made other than by the United States Post Office, (1) the postmark so made must bear a date on or before the last date, or the last day of the period, prescribed for filing the document, and (2) the document must be received by the agency, officer, or office with which it is required to be filed not later than the time when a document contained in an envelope or other appropriate wrapper which is properly addressed and mailed and sent by the same class of mail would ordinarily be received if it were postmarked at the same point of origin by

the United States Post Office on the last date, or the last day of the period, prescribed for filing the document. However, in case the document is received after the time when a document so mailed and so postmarked by the United States Post Office would ordinarily be received, such document will be treated as having been received at the time when a document so mailed and so postmarked would ordinarily be received, if the person who is required to file the document establishes (i) that it was actually deposited in the mail before the last collection of the mail from the place of deposit which was postmarked (except for the metered mail) by the United States Post Office on or before the last date, or the last day of the period, prescribed for filing the document, (ii) that the delay in receiving the document was due to a delay in the transmission of the mail, and (iii) the cause of such delay. If the envelope has a postmark made by the United States Post Office in addition to the postmark not so made, the postmark which was not made by the United States Post Office shall be disregarded, and whether the envelope was mailed in accordance with this subdivision shall be determined solely by applying the rule of (a) of this subdivision.

The regulation envisions two distinct scenarios when privately-metered items that do not also bear a Post Office postmark are mailed within the 90–day period and are received by the Tax Court. First, if properly addressed the item is deemed timely filed if received within the time that "the same class of mail would ordinarily be received if it were postmarked at the same point of origin by the United States Post Office." 29 C.F.R. § 301.7502–1(c)(iii)(b)(2). Second, if the properly addressed item arrives after the time it would ordinarily be

---

**2.** The legislative history of 26 U.S.C. § 7502 contains this observation: "Since it is possible to predate [and postdate] postmarks where mailing machines or other devices are used, subsection (b) provides that a postmark not made by the United States post office shall be deemed the date of delivery only to the extent permitted by regulations." H.R.Rep. No. 1337, 83rd Cong.,

2d Sess., *reprinted in* 1954 U.S. Code Cong. & Admin. News, 4017, 4621, 5266.

**3.** 26 U.S.C. § 7502(b) provides:
This section shall apply in the case of postmarks not made by the United States Postal Service only if and to the extent provided by regulations prescribed by the Secretary.

received, nonetheless it may be treated as timely filed if the taxpayer establishes (1) that the item was actually deposited in the mail before the end of the period, (2) that the delay in receiving the document was due to a delay in the transmission of the mail, and (3) the cause of such delay. 29 C.F.R. § 301.7502–1(c)(1)(iii)(b)(i)–(iii).

The Tax Court addressed the motion to dismiss for lack of jurisdiction within this regulatory framework. In response to the motion, the Rotenberrys offered evidence to establish that their petition was received within the ordinary time of receipt of similar mail from Houston postmarked on December 23, 1985 and, alternatively, that the petition was timely mailed and the delay in receipt was due to a delay in the handling of the mail caused by the Christmas holidays and year-end mail crunch.

The Special Trial Judge found that the petition had been mailed timely but that it had not been received within the ordinary time expected of such mail from Houston. The latter finding was based upon testimony of a quality-control specialist of the United States Postal Service who attested to the results of a statistical sampling which reflected that the mail should have reached Washington in not more than five days.

The Rotenberrys contend that this finding is clearly erroneous because the survey period used by the postal witness covered too many non-holiday days, and the place of receipt in the survey was the area distribution center for Washington, D.C., and not the ultimate addressee. They add that the fifth day would have been a Saturday with no mail deliveries. Although we tend to agree that in this instance the ordinary delivery time to the addressee probably extended to eight days,[4] because of today's disposition we need not determine whether this finding crosses the clearly erroneous threshold. Fed.R.Civ.P. 52(a); *Anderson*

*v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The court *a quo* concluded that the Rotenberrys' privately-metered mail failed to satisfy the cause-of-delay element of the regulation, 29 U.S.C. § 301.7502–1(c)(1)(iii) (b)(iii). The Tax Court found that the petition was timely mailed, and the IRS candidly concedes that the delay was occasioned by a delay in the transmission of the mail. The crucial determination is whether the Rotenberrys adequately established the cause of the delay. The Special Trial Judge and Tax Court concluded that they did not. We disagree with this conclusion, being persuaded that the Tax Court placed a burden on the taxpayers not intended by the Congress or required by the regulation. The Tax Court read the regulation to require explicit proof of the particular cause of the delay in receipt of the Rotenberry packet, dismissing as generalizations the proof offered by the taxpayers. The court opined: "It is not enough to simply speculate that these factors, alone or in combination, could conceivably be the cause of delays in mail delivery."[5]

The factors referred to by the Tax Court included uncontroverted evidence of the following: (1) the dramatic increase in the volume of holiday mail; (2) the mailing by the IRS of 87 million tax return forms on December 27, 1985; (3) the recognized proclivity of some post office employees to take time off, leave early, and work less diligently during the holidays; (4) the addition of temporary postal employees during the holiday rush with their known deficiencies in accuracy and efficiency; (5) the heavy airline passenger traffic during the holidays, requiring that mail be pulled off flights and held for later flights, causing mail handling delays at Houston Intercontinental Airport of up to 48 hours; (6) the inclement weather during the critical period and the adverse effect it had on travel in

4. *See* footnote 6, *infra.*

5. Notably the Tax Court has heretofore recognized the salutary purpose of 26 U.S.C. § 7502, specifically, "to avoid hardship for taxpayers where deliveries of their petitions are delayed through no fault of their own but rather be-

cause of improper functioning of the U.S. mail." *International Television Film Production, Inc. v. Commissioner*, T.C. Memo 1983–152 (March 22, 1983); *see also Estate of Cerito v. Commissioner*, 73 T.C. 896 (1980).

the District of Columbia; and (7) the mail routine which calls for delivery of mail to the Tax Court only once a day, in the early morning, so that any item received at its immediate post office during the day is not delivered until the next.[6] The Tax Court found this evidence insufficient, concluding that the cause element of the regulation required more. In so concluding the Special Trial Judge and the Tax Court erred.

The standard applied by the Tax Court is too demanding and unlikely ever to be met by a taxpayer. The IRS counters that a taxpayer may satisfy this third requirement if the item shows on its face that it was improperly routed to the wrong address or if the post office explains the specific cause of the delay of the particular item. We are not persuaded.

We are impelled to the view that when it authorized the use of privately-metered mail, and empowered the Secretary to promulgate regulations to avoid abuse in the mailing/filing context, Congress did not intend that the Secretary set a trap for the unwary. The Tax Court's interpretation of the regulation sets such a trap. A taxpayer who, relying on the regulations, uses a private postage meter and mails an item within the designated time, and can prove such, forfeits his rights resulting from timely mailing if there is a delay unless he can pinpoint the particular act of negligence, or inefficiency, or delaying accident within the postal service. If the postal service functions as its survey statistics show it should, the taxpayer obtains review. If the postal service does not, the taxpayer suffers under the Tax Court's interpretation of the regulation.

In the case at bar, the Rotenberry parcel was dispatched by certified mail. The postal employee who received it failed to place the date stamp on the certified mail receipt. Had that been done, this case would have fallen under the postal-metered provision and the Rotenberrys' filing would have been considered timely. Under the appeal-ed ruling, that error, and the failure of the postal service to perform in accordance with its own schedules, combine to defeat the Rotenberrys' right to seek relief from the Tax Court.

The IRS suggests that requiring proof of a specific cause of the delay of a specific item of mail is not unreasonable because the Rotenberrys still have the option of paying the taxes and then seeking a refund. *See* 26 U.S.C. §§ 6532, 7422; 28 U.S.C. §§ 1346, 1491. In response we need look no further than the stated congressional intent in establishing the Tax Court's predecessor agency, in part quoted in note 1 *supra*. The Rotenberrys are not obliged to risk bankruptcy or to suffer severe financial hardship as a requisite to securing review of the assessments.

The Rotenberrys would have us strike down the regulation as unreasonable. Having concluded that the Tax Court erroneously applied the regulation, and reversing on that basis, we need not address its validity. That remains for another day. We note merely that we will sustain Treasury regulations unless plainly inconsistent with the revenue statutes, *Commissioner of Internal Revenue v. South Texas Lumber Co.*, 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948), or improperly adopted, or unreasonable. *Anderson Clayton & Co. v. United States*, 562 F.2d 972 (5th Cir.1977). Two circuits have upheld this regulation. *Lindemood v. Commissioner of Internal Revenue*, 566 F.2d 646 (9th Cir.1977); *Fishman v. Commissioner of Internal Revenue*, 420 F.2d 491 (2d Cir.1970).

*Conclusion*

We conclude that the Tax Court erred in its interpretation of the regulation which led to its ruling that the proof offered by the Rotenberrys failed to establish the cause of the delay in the delivery of their petition. The specificity demanded by the Tax Court is not required by the regulation. The cause-of-delay element may be

---

**6.** Assuming delivery to the area distribution post office on the fifth survey day, a Saturday, a Monday morning delivery to the post office serving the Tax Court, after preparation of Monday's delivery to the Tax Court, would result in a delivery on Tuesday, December 31, 1985, the eighth day after the mailing in Houston.

satisfied if the taxpayer offers adequate proof of reasons for delays in the processing and handling of the mail generally between the receiving station and the addressee during the critical days involved. The proof offered need not specifically pinpoint the item of mail in question.

REVERSED and REMANDED.