ESTATE OF JOHN D. MANSCILL, DECEASED, FRANCES D. MANSCILL WEST, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 32405-86.          Filed April 7, 1992.

*Michael W. McGrath* and *Charles Speed Gray,* for petitioner.
*Aubrey C. Brown,* for respondent.

CHABOT, *Judge:* Respondent determined a deficiency in Federal estate tax against petitioner in the amount of $302,732.

After a concession by petitioner, the issue for decision is whether "Fund B" established under decedent's will constitutes "qualified terminable interest property" (hereinafter sometimes referred to as QTIP), within the meaning of section 2056(b)(7)-(B),[1] and thus is eligible for the marital deduction.

### FINDINGS OF FACT

Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, Frances Davis Manscill West (hereinafter sometimes referred to as Frances), executrix of the Estate of John Davis Manscill, resided in Mayfield, Kentucky. Decedent's estate was probated in the Probate Court of Graves County, Kentucky. As of the date of his death, decedent was a domiciliary of Mayfield.

John Davis Manscill, decedent, died testate on December 6, 1982. Decedent was survived by his widow, Frances (then 39 years old), and their daughter, Frances Nicole Manscill (hereinafter sometimes referred to as Nicole). Nicole was born on January 25, 1971.

Decedent's will was signed on February 22, 1979. The will was ordered probated by an order dated January 4, 1983. By the January 4, 1983, order, Frances was appointed petitioner's executrix. Sometime after being appointed executrix, Frances remarried and changed her name to Frances Davis Manscill West.

The will designates Nicole as trustee. The will designates Frances as successor trustee if Nicole is incapacitated or incapable of serving as trustee for any reason.

The will (1) directs the payments of the estate's debts, expenses, and taxes, (2) acknowledges Frances' ownership of

---

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 in effect for the date of decedent's death.

household furniture, accessories and appliances, and (3) bequeaths to Frances all of decedent's tangible personal property. The will then bequeaths to Nicole, as trustee, the residue of decedent's estate and directs the trustee to divide and hold the residue into two separate parts, Fund A and Fund B. The will (Article III) states as follows:

(2) The first part shall be an amount equal in value to my adjusted gross estate as finally determined for federal estate tax purposes, less the sum of (a) equivalent exemption as defined below; (b) the amount of any charitable deduction allowed to my estate; (c) the value of all other property interest, included in my gross estate for federal estate tax purposes which pass or have passed to or for the benefit of my wife, FRANCES DAVIS MANSCILL, in such a manner as to qualify for the marital deduction allowed to my estate. Provided, however this amount shall not exceed the maximum marital deduction allowed to my estate as provided in Section 2056(c) of the Federal Internal Revenue Code, less the amount determined in (c) of the preceding sentence.

(3) The part of my estate as described in (2) above shall be set aside by my Trustee as Fund A.

(4) The second part shall consist of the remaining "Trust Property" or all of the "Trust Property" if the first part is zero (0) or less than zero (0).

(5) The part of my estate described in (4) above shall be known as Fund B.

(6) "Equivalent Exemption" as used in this agreement shall be an amount which would impose a Federal Estate Tax on my estate equal to the sum of (a) the unified credit allowed to my estate as provided in Section 2010 of the Federal Internal Revenue Code, (b) the credit for State death taxes allowed to my estate as provided in Section 2011 of the Federal Internal Revenue Code, and (c) any other credits allowed to my estate. Provided, however this amount shall be reduced by any adjusted taxable gifts made by me, but not to less than zero (0).

## Fund A

### Disbursements of Income

As to Fund A, the will directs the trustee to pay to Frances, or for her use and benefit if she is under a disability, the entire net income from Fund A in quarterly or more frequent installments.

### Disbursements of Corpus

The will also authorizes Frances, upon giving notice to the trustee, to withdraw each year from the corpus of Fund A any amount she desires, even to the point of completely exhausting the corpus of Fund A.

*Fund B*

### *Disbursements of Income*

As to Fund B, the will (Article III) states as follows:

(17) During her lifetime, the Trustee shall pay to FRANCES DAVIS MANSCILL, or use for her benefit if she should be under any disability, the entire net income from Fund B in quarterly or more frequent installments. Upon the death of FRANCES DAVIS MANSCILL, the remaining unappointed corpus of Fund A and the remaining corpus of Fund B shall be distributed to my daughter, FRANCES NICOLE MANSCILL.

If on Frances's death Nicole is less than 40 years old, then the trustee is to continue the trust and to use the net income from the trust for the maintenance, support, and education of Nicole. Nicole is to receive partial distributions of the trust assets upon reaching ages 25, 30, and 35, and final distribution at age 40.

### *Disbursements of Corpus*

The will (Article IV) provides as follows:

(1) The Trustee, in her discretion, may disburse from the corpus of Fund B (even to the point of completely exhausting same) such amounts as she deems advisable to support FRANCES DAVIS MANSCILL in substantially the same standard of living to which she was accustomed at the time of my death. It is my desire that the Trustee be liberal in making disbursements from corpus for the benefit of FRANCES DAVIS MANSCILL for my primary concern is for her reasonable support and not for the preservation of the corpus for ultimate distribution to my descendants.

(2) During FRANCES DAVIS MANSCILL's lifetime, the Trustee, with the prior approval of FRANCES DAVIS MANSCILL, may also make disbursements from the corpus of Fund B for the support of my daughter, FRANCES NICOLE MANSCILL. Said disbursements shall be based upon my daughter, FRANCES NICOLE MANSCILL's individual needs. Furthermore, any disbursements from the corpus of Fund B for the benefit of my daughter, FRANCES NICOLE MANSCILL, shall not be taken into account in a subsequent division of corpus.

Frances, in her capacity as executrix, timely filed a Federal estate tax return (Form 706) for petitioner, and elected (on Schedule M) to treat Fund B as a QTIP under section 2056(b)(7).

## OPINION

Section 2001(a) imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. The amount of the tax is determined, in part, by the value of the taxable estate. Sec. 2001(b). Section 2051 defines the value of the taxable estate as the value of the gross estate less deductions provided for in section 2051 through 2056B. Section 2056(a) provides for a "marital deduction"—the value of the gross estate is to be reduced by the value of property interests passing to the surviving spouse. Section 2056(b) provides a series of rules generally disqualifying a transfer from eligibility for the marital deduction if the transferred interest is a life estate or other terminable interest. Effective for estates of decedents dying after 1981, section 2056(b)(7),[2] as added by section 403(d)(1) of the Economic Recovery Tax Act of 1981 (hereinafter sometimes referred to as ERTA 1981), Pub. L. 97-34, 95 Stat. 302, 305, permits a marital deduction for a QTIP. A QTIP is property in which a decedent transfers to a surviving spouse a "qualifying income interest for life", if the executor or executrix elects to treat the property as a QTIP. Sec. 2056(b)(7)(B)(i). In general

---

[2]Sec. 2056(b)(7)(B) provides, in pertinent part, as follows:

SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(7) ELECTION WITH RESPECT TO LIFE ESTATE FOR SURVIVING SPOUSE.—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(B) Qualified terminable interest property defined.—For purposes of this paragraph—
(i) In general.—The term "qualified terminable interest property" means property—
(I) which passes from the decedent,
(II) in which the surviving spouse has a qualifying income interest for life, and
(III) to which an election under this paragraph applies.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(ii) Qualifying income interest for life.—The surviving spouse has a qualifying income interest for life if—
(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, &ast; &ast; &ast; and
(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. &ast; &ast; &ast;

a surviving spouse has a "qualifying income interest for life" if (1) the surviving spouse is entitled to all the income from the property, and (2) no one has a power to appoint any part of the property to any person other than the surviving spouse. Sec. 2056(b)(7)(B)(ii).

Petitioner contends that it is entitled to a marital deduction for the property passing to Fund B.[3] Petitioner argues that Fund B is a QTIP as defined in section 2056(b)(7)(B). Petitioner contends Frances has a qualifying income interest for life as defined in section 2056(b)(7)(B)(ii). Petitioner contends that section 2056(b)(7)(B)(ii)(II), requiring that no person have a power to appoint any part of the property to any person other than the surviving spouse, is met. Petitioner contends that the trustee does not have the power to appoint the corpus of Fund B to anyone but Frances because the corpus of Fund B can be distributed for the benefit of Nicole only with Frances' prior approval.

Respondent argues that petitioner is not entitled to a marital deduction for the property passing to Fund B, because Fund B is not a QTIP. Respondent contends that Frances does not have a qualifying income interest for life because the trustee, with the approval of Frances, has the power to appoint the corpus of Fund B to Nicole, and this power violates the requirements of section 2056(b)(7)(B)(ii)(II). Respondent does not contend that Fund B fails to satisfy any other of the QTIP requirements.

We agree with respondent.

Deductions are a matter of legislative grace, and a petitioner seeking a deduction must meet every condition the Congress has imposed. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 (1934). A taxpayer seeking a deduction has the burden to point to an applicable statute and show that the taxpayer is within its terms. *New Colonial Ice Co. v. Helvering,* 292 U.S. at 440. The foregoing rules apply to the marital deduction. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 464 (1967); *Estate of Wycoff v. Commissioner,* 506 F.2d 1144, 1149 (10th Cir. 1974), affg. 59 T.C. 617 (1973); *Estate of Ahlstrom v. Commissioner,* 52 T.C. 220, 226 (1969). Qualification for the

---

[3]A marital deduction was allowed for the property passing to Fund A.

marital deduction is determined as of the date of death. *Jackson v. United States,* 376 U.S. 503, 508 (1964); *Estate of Wycoff v. Commissioner,* 506 F.2d at 1149.

The dispute between the parties turns on whether or not the trustee has the power to appoint any part of the corpus of Fund B to any person other than Frances, as prohibited by section 2056(b)(7)(B)(ii)(II). The will provides that:

During FRANCES DAVIS MANSCILL's lifetime, the Trustee, with the prior approval of FRANCES DAVIS MANSCILL, may also make disbursements from the corpus of Fund B for the support of my daughter, FRANCES NICOLE MANSCILL. Said disbursements shall be based upon my daughter, FRANCES NICOLE MANSCILL's individual needs.

On its face, the will gives to the trustee, with Frances' prior approval (see 1 Restatement, Trusts 2d, sec. 186(a) (1959); IIA Scott, Trusts 250 (1987)), the power to appoint part of the corpus of Fund B to Nicole. (For general definition of "power of appointment", see sec. 20.2041-1(b)(1), Estate Tax Regs.) Because the statute requires that no one have such a power during Frances' lifetime, Fund B fails to qualify under the specific language of the statute. The sweeping language of the statute ("no person") precludes even Frances' having such a power. This is made plain in the legislative history of ERTA 1981 (H. Rept. 97-201, at 161 (1981), 1981-2 C.B. 352, 378) as follows:

*Explanation of Provision*

*Marital Deduction*

The committee bill removes the quantitative limits on the marital deduction for both estate and gift tax purposes. Thus, unlimited amounts of property (other than certain terminable interests) can be transferred between spouses without estate or gift tax. The bill removes the provisions of present law which disallow the martial [sic] deduction for transfer between spouses of community property. In addition, certain transfers of qualified terminable interests would qualify for the deduction.

Under the bill, *if certain conditions are met,* a life interest granted to a surviving spouse will not be treated as a terminable interest. The entire property subject to such interest will be treated as passing to such spouse and no interest in such property will be considered to pass to any person other than the spouse. Accordingly, the entire interest will qualify for a marital deduction.

In general, transfers of terminable interests may be considered qualified terminable interests if the decedent's executor (or donor) so elects and the

spouse receives a qualifying income interest for life. A qualifying income interest *must meet several conditions.* First, the spouse must be entitled for a period measured solely by the spouse's life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals. * * *

Second, there must be *no power in any person (including the spouse)* to appoint any part of the property subject to the qualifying income interest to any person other than the spouse during the spouse's life. This rule will permit the existence of powers in the trustee to invade corpus for the benefit of the spouse but will insure that the value of the property not consumed by the spouse is subject to tax upon the spouse's death (or earlier disposition). However, the bill permits the creation or retention of any powers over all or a portion of the corpus, *provided all such powers are exercisable only at or after the death of the spouse.*

[Emphasis added.]

To the same effect see Staff of Joint Committee on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 234-235 (J. Comm. Print 1981). The material does not appear in the bill as reported by the Senate Finance Committee (see S. Rept. 97-144, at 126-128 (1981)); however, the language described by the House Ways and Means Committee report is the same as what was enacted on this point.

Thus, a power in the trustee to appoint any part of Fund B to Nicole would disqualify Fund B from QTIP status. A power to so appoint in Frances, herself, would similarly disqualify Fund B. We conclude that a power to so appoint exercisable jointly by the trustee and Frances similarly disqualifies Fund B from QTIP status.

Petitioner contends that the Ways and Means Committee report and the conference report present—

an unmistakable central theme * * * viz., that marital transfers of property should not be taxed and that the conditions of the Code applicable thereto should be liberally construed. Specifically, Congress did not intend to impose strict and harsh conditions to the creation of qualified terminable interest property, and will and trust provisions should be construed to give effect to this stated objective.

As to the message of the legislative history, petitioner thereby ignores the only statement in the report that deals specifically with the matter before us, as follows:

Second, there must be *no power in any person (including the spouse)* to appoint any part of the property subject to the qualifying income interest to any person other than the spouse during the spouse's life. [H. Rept. 97-201, at 161 (1981); emphasis added.]

Also, the short description in the report emphasizes that the QTIP treatment is available only "if certain conditions are met" and that the interest "must meet several conditions". H. Rept. 97-201, at 161 (1981).

Thus, the tone of the Ways and Means Committee report on the one issue we face is decidedly to emphasize that this strict condition of the statute may not be avoided by a so-called liberal construction.

Petitioner relies on *Estate of Parasson v. United States,* 87-1 USTC par. 13,708 (N.D. Ohio 1987), where it was held that the surviving spouse had a qualifying income interest for life. In *Estate of Parasson,* the court held that the will language permitting payments of principal to "any beneficiary" meant "any income beneficiary". *Id.* at 87,918. Because an earlier provision of the will stated that during the widow's lifetime she was the only income beneficiary of the trust, it followed she was the only one who could receive payments of principal under the contested provision. *Id.* Since no other beneficiaries could receive income or principal while the widow was living, the court held that the trustee did not have the power to appoint the property to any person other than the surviving spouse. *Id.* at 87,919. The court concluded that the trust in *Estate of Parasson* satisfied the requirement of section 2056(b)(7)(B)(ii)(II).

In the instant case, the will specifically provides that the trustee may make payments of principal for the benefit of Nicole while Frances is alive. Thus, *Estate of Parasson* is distinguishable on a critical element.

Petitioner argues that the trustee does not have the power to appoint any part of the property to a person other than Frances because Frances' prior approval is required to make any payments for the support of Nicole. The prior approval requirement of the surviving spouse does not cause the will to satisfy the requirements of section 2056(b)(7)(B)(ii)(II). As we have seen, Fund B cannot be a QTIP if any person has the power to appoint principal to Nicole, and this is so even if the appointer is Frances, or Frances and the trustee acting together.

Petitioner argues that administrative powers granted to a trustee to make payments to third parties that will benefit the surviving spouse do not disqualify an interest as qualified

terminable interest property unless the grant is intended to deprive the surviving spouse of the beneficial enjoyment. Petitioner quotes section 20.2056(b)-5(f)(4), Estate Tax Regs., as supporting this proposition. However, this regulation addresses trusts established under section 2056(b)(5) rather than under 2056(b)(7). Section 2056(b)(5) specifically gives the surviving spouse the right to appoint the property. Section 2056(b)(7), interpreted in light of the legislative history, specifically denies the surviving spouse the power to appoint the property to any one other than the surviving spouse while the surviving spouse lives. Accordingly, we conclude that petitioner's analysis does not support its case.

Petitioner makes much of the will's use of the phrase "for the support of my daughter", rather than "to my daughter". Petitioner points out that the statute requires that no one have "a power to appoint * * * to any person other than the surviving spouse." *Id.* Petitioner concludes from this that Fund B qualifies because no one has the power to appoint *to* Nicole. Under petitioner's reading of the statute, petitioner still would not prevail, because (1) a payment *for the benefit of* Nicole would be made *to* someone other than Nicole, (2) the payment for the benefit of Nicole could, under the will, be made *to* someone other than Frances, and (3) the will thus would permit a payment *to* someone other than the surviving spouse. As a result, even under petitioner's strained reading of the statute, Fund B would not qualify as a QTIP. In any event, we do not give such a meaning to the term "power to appoint * * * to". See, e.g., *Estate of Wheeler v. Commissioner,* 26 T.C. 466, 471 (1956), where we held that a will provision authorizing a use "for the benefit of said children" violated a prohibition on appointing "any part thereof [i.e., of the trust] to any person other than the surviving spouse." To the same effect see *Gelb v. Commissioner,* 298 F.2d 544, 546-547 (2d Cir. 1962), affg. on this issue and revg. on another issue T.C. Memo. 1960-187, where the same result was obtained even though the amounts paid for the benefit of the child were to be paid to the widow and used by the widow for the child. See also *Estate of Bowling v. Commissioner,* 93 T.C. 286, 294 (1989), where we held that the trustee had the power to invade the trust corpus during the life of the testator's surviving spouse to meet the emergency needs not only of the surviving spouse, but also of

his son and brother; thus, the trustee in *Estate of Bowling* had the power to appoint the property to someone other than the surviving spouse, and so the property in that case was not a QTIP under section 2056(b)(7)(B).

Finally, petitioner urges us to hold that a payment under Article IV(2) of the will "should be construed as the equivalent of distributions to be made *to the surviving spouse* for her daughter's benefit." (Petitioner does not indicate whether, in such a situation, Frances should be taxed under section 2519.) This approach ignores the fact that Article IV(1) of the will specifically authorizes distributions of Fund B principal to Frances "to support FRANCES * * * in substantially the same standard of living to which she was accustomed at the time of [decedent's] death." An imputation to Frances of payments for the benefit of Nicole is not what the will provides. See also *Gelb v. Commissioner, supra.* It might be argued that, if under State law Frances had an obligation to support Nicole while Nicole was a minor, then any payment for the support of Nicole would merely satisfy Frances' legal obligations and so would not be an appointment of corpus to Nicole. However, we need not examine this issue because in the instant case, the possible payments for the support of Nicole are not limited to the amount of Frances' legal obligation under Kentucky law to support Nicole. See Tech. Adv. Memo. 8913003 (Dec. 19, 1988) and 8701004 (Oct. 9, 1986).

------

### 1.

Petitioner sought to introduce testimony as to decedent's intent. Respondent objected, contending that such evidence is inadmissable under Kentucky's law as to construction of wills. We took respondent's motion under advisement.

We conclude that the matter is moot. The evidence was intended to show decedent's intent to benefit Frances, and to do so by reducing petitioner's estate tax liability. There was no evidence that decedent did not intend to give to the trustee the power, with Frances' prior approval, to make disbursements from Fund B for Nicole's benefit. That power is the element that disqualifies Fund B from QTIP status. Because the evidence as to intent does not bear on that power, the

evidence has no effect on the outcome of the instant case and we do not decide whether the evidence is admissible.

2.

Decedent's will was signed on February 22, 1979, before the ERTA 1981 enactment of the unlimited marital deduction and the QTIP provisions. We do not face in the instant case the specific problems (transitional rule) we dealt with in *Estate of Levitt v. Commissioner,* 95 T.C. 289 (1990). However, as in *Estate of Levitt,* we have struggled with the task of applying the language of a will to a statute which did not exist when the will was drafted and executed. As in *Estate of Levitt,* we read the statute to mean what it says, without regard to which party benefits from such a reading.

We hold for respondent on the only issue presented for decision.

However, in order to take account of the credit for State death taxes and the deductions for administrative expenses,

*Decision will be entered under Rule 155.*