SNAP-DRAPE, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2174–93.     Filed July 13, 1995.

*John D. Copeland,* for petitioner.
*Robert Morrison* and *Michael Prindible,* for respondent.

OPINION

WRIGHT, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for taxable year 1990 in the amount of $239,463.

After concessions by the parties, the issues for our consideration are as follows:

(1) Whether dividends paid to an employee stock ownership plan, deductible under section 404(k),[1] are deductible under section 56(g)(4)(C)(i) in computing the adjusted current earnings of a corporation for purposes of determining alternative minimum tax, and thus, whether section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., is valid. We hold that the section 404(k) dividends are not deductible under section 56(g)(4)(C)(i) and that the regulation is valid.

(2) Whether respondent abused her discretion by providing retroactive application of section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs. We hold that she did not.

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. At the time the petition was filed, petitioner's principal place of business was Carrollton, Texas.

Petitioner is a corporation organized and existing under the laws of Texas. Petitioner was formed during the 1970's and prior to February 22, 1990, was owned 100 percent by Raymond R. Belknap (Belknap) and Gerald E. Guebert (Guebert) equally. As of February 22, 1990, there were 1,240,000 shares of common stock issued and outstanding; Belknap and Guebert each owned 620,000 shares. Petitioner's principal business is the manufacturing and marketing of table skirting for buffet tables, banquet tables, conference tables, and the like. Petitioner is also in the textile business, converting fabric into table skirting. Belknap and Guebert

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

invented a clip which is used to attach the table skirting to the tables.

On February 1, 1990, petitioner established the Snap-Drape, Inc. Employee Stock Ownership Plan and Trust (the ESOP). Felton Norris, Darrin Garlish, and John Phillips were designated as the trustees. On January 22, 1991, respondent issued a favorable determination letter to the ESOP for qualification under sections 401(a) and 501.

Prior to February 1990, Belknap and Guebert decided to retire and sell their respective interests in petitioner. On February 22, 1990, the ESOP entered into an agreement with Belknap and Guebert. The agreement provided that the ESOP would purchase 1 million shares of common stock in petitioner (approximately 80 percent of its common stock issued and outstanding) from Belknap and Guebert. To facilitate the transaction the ESOP borrowed $5 million from First City, Texas-Dallas (the bank), and executed a note payable to the bank in the face amount of the same. The loan was guaranteed by petitioner. In addition, the note provided for mandatory prepayments of principal based upon a formula related to petitioner's available cash-flow. Also on February 22, 1990, the ESOP distributed the proceeds of the loan by issuing a total of four checks, two each to both Belknap and Guebert, totaling $5 million in exchange for 1 million shares of petitioner's stock. Belknap and Guebert each received $2,500,000 in exchange for 500,000 shares of stock in petitioner.

During taxable year 1990, petitioner made contributions to the ESOP in the amount of $240,732 and claimed a deduction for the entire amount under section 404(a). Petitioner also paid to the ESOP a cash dividend with respect to its common stock in the amount of $1,440,000. The ESOP transferred the entire amount of the dividend to the bank as payment of interest and principal under the note.

On its 1990 Federal income tax return, petitioner claimed a deduction with respect to the cash dividend paid to the ESOP in the amount of $1,440,000 under section 404(k) (section 404(k) deduction or section 404(k) dividend). Attached to petitioner's return, among other items, is Form 4626, Alternative Minimum Tax—Corporations. Petitioner did not include the section 404(k) deduction in the computation of its adjusted current earnings (ACE or ACE adjustment) for pur-

poses of determining its alternative minimum tax (AMT) and, as a result, concluded that it was not liable for AMT. Respondent determined that by failing to include the section 404(k) dividends in its ACE adjustment, petitioner did not properly compute its AMT and therefore is liable for AMT in the amount of $210,613.

Petitioner argues that section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., is an improper interpretation of section 56(g)(4)(C)(i), and thus it is invalid. Alternatively, petitioner argues that if we find that the regulation is valid, respondent abused her discretion by providing retroactive application. Respondent argues otherwise. We agree with respondent.

*Expert Reports*

As a preliminary matter, petitioner offered two expert witness reports for consideration by the Court. The reports conclude that section 404(k) dividends are deductible for purposes of computing earnings and profits and are therefore deductible for purposes of computing the ACE adjustment. The reports also state that had respondent never issued section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., the section 404(k) deduction would not be disallowed in computing the ACE adjustment. Each expert further opined that prior to the issuance of the regulation, it was not reasonably foreseeable that respondent would disallow a section 404(k) deduction for purposes of computing the ACE adjustment.

Prior to trial, respondent filed a motion in limine objecting to the testimony of the expert witness reports that petitioner offered into evidence. Respondent seeks the exclusion of the expert reports on the following grounds: (1) The reports address only questions of law and not fact; (2) the testimony offered by each witness constitutes only advocacy of the underlying legal question; and (3) the probative value of the reports is substantially outweighed by considerations of undue delay, waste of time, and needless presentation of cumulative evidence. Petitioner argues that even if we find that the reports contain improper conclusions of law as to whether section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., is valid, the reports should be accepted for purposes of considering whether respondent abused her discretion. Specifically, petitioner contends that the expert reports are helpful in

determining whether it relied on settled law sufficient to preclude retroactive application of the regulation.

We agree with respondent that the reports contain improper conclusions as to issues of law and not fact, as well as statements of mere advocacy, which violate our holding in *Laureys v. Commissioner,* 92 T.C. 101 (1989). Although *Laureys* addressed expert testimony with respect to valuation issues, we believe that the principles stated therein are applicable to the instant case. Specifically, the experts in the instant case have become advocates for the position argued by petitioner. *Id.* at 129. After careful consideration of petitioner's expert reports, we find them to be of no assistance in making our findings of fact and deciding the issues in the instant case. Consequently, respondent's objections are sustained, and the reports will not be received in evidence.

## *Validity of Regulation*

Treasury regulations are not to be rejected unless they are unreasonable and plainly inconsistent with the revenue statutes. *Rotenberry v. Commissioner,* 847 F.2d 229 (5th Cir. 1988); *Western Waste Indus. v. Commissioner,* 104 T.C. 472 (1995). The initial phase of an analysis considering the validity of a Treasury regulation generally requires the determination of whether the regulation in question is a legislative regulation or an interpretive regulation. Treasury regulations issued pursuant to a specific grant of congressional authority are entitled to an especially high degree of deference. *Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 976 (5th Cir. 1977); *Phillips Petroleum Co. v. Commissioner,* 97 T.C. 30, 34 (1991). The regulation at issue in the instant case was issued pursuant to the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101–239, sec. 7611(g)(3), 103 Stat. 2106, 2373. Section 7611(g)(3) of the Act provides:

Regulations on Earnings and Profits Rules.—Not later than March 15, 1991, the Secretary of the Treasury or his delegate shall prescribe initial regulations providing guidance as to which items * * * of deduction are disallowed under section 56(g)(4)(C) * * *

We therefore conclude that section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., is a legislative regulation, issued pursuant

to a specific grant of authority, and is entitled to an elevated degree of deference.

Where the Commissioner acts under specific authority, our primary inquiry is whether the interpretation or method is within the delegation of authority. *Rowan Cos. v. United States,* 452 U.S. 247, 253 (1981). The purpose for the enactment of the AMT regime is as follows:

the minimum tax should serve one overriding objective: to ensure that no taxpayer with substantial economic income can avoid significant tax liability by using exclusions, deductions, and credits. Although these provisions may provide incentives for worthy goals, they become counterproductive when taxpayers are allowed to use them to avoid virtually all tax liability. The ability of * * * highly profitable corporations to pay little or no tax undermines respect for the entire tax system * * *. In addition, * * *, the committee believes that it is inherently unfair for * * * highly profitable corporations to pay little or no tax due to their ability to utilize various tax preferences.

In particular, both the perception and the reality of fairness have been harmed by instances in which major companies have paid no taxes in years when they reported substantial earnings, and may even have paid substantial dividends to shareholders. * * *

[S. Rept. 99–313, at 518–519 (1986), 1986–3 C.B. (Vol. 3) 1, 518–519.]

Based on the above rationale, Congress revamped the AMT provisions to include corporate taxpayers and promulgated a series of highly technical provisions designed to mirror the AMT imposed on individuals. See secs. 53–59.

Simply stated, AMT is equal to the excess of tentative minimum tax over the regular tax for the taxable year. Sec. 55(a). In the case of a corporation, the tentative minimum tax is 20 percent of the alternative minimum taxable income (AMTI) that exceeds the exemption amount,[2] reduced by AMT foreign tax credit. Sec. 55(b)(1)(B). The term "AMTI" means the taxable income (for regular tax purposes) of a taxpayer determined with the adjustments provided in sections 56 and 58, and increased by the amount of the items of tax preference described in section 57. Sec. 55(b)(2).

With respect to corporate taxpayers, there is an adjustment for adjusted current earnings as provided under section 56(g). Sec. 56(c)(1). Section 56(g) provides:

---

[2] In the case of a corporation, the term "exemption amount" means $40,000. Sec. 55(d)(2).

(1) IN GENERAL.—The * * * [AMTI] of any corporation for any taxable year beginning after 1989 shall be increased by 75 percent of the excess (if any) of—

(A) the * * * [ACE] of the corporation, over

(B) the * * * [AMTI] (determined without regard to this subsection and the alternative tax net operating loss deduction).

* * * * * * *

(3) ADJUSTED CURRENT EARNINGS.—* * * the term [ACE] means the * * * [AMTI] for the taxable year—

(A) determined with the adjustments provided in paragraph (4), and

(B) determined without regard to this subsection and the alternative tax net operating loss deduction.

(4) ADJUSTMENTS.—In determining * * * [ACE], the following adjustments shall apply:

* * * * * * *

(C) DISALLOWANCE OF ITEMS NOT DEDUCTIBLE IN COMPUTING EARNINGS AND PROFITS.—

(i) IN GENERAL.—A deduction shall not be allowed for any item if such item would not be deductible for any taxable year for purposes of computing *earnings and profits*. [Emphasis added.]

* * * * * * *

(5) OTHER DEFINITIONS.—For purposes of paragraph (4)—

(A) EARNINGS AND PROFITS.—The term "earnings and profits" means earnings and profits computed for purposes of subchapter C.

Congress authorized the Secretary to provide guidance as to which items of deduction are disallowed under section 56(g)(4)(C) for purposes of computing earnings and profits. The Omnibus Budget Reconciliation Act of 1989, Pub. L. 101–239, sec. 7611(g)(3), 103 Stat. 2106, 2373. Section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., was promulgated pursuant to this grant of authority and provides in pertinent part as follows:

Partial list of items not deductible in computing earnings and profits. The following is a partial list of items that are not taken into account in computing earnings and profits and thus are not deductible in computing adjusted current earnings [ACE].

* * * * * * *

(iii) Dividends deductible under the following sections of the Code:

* * * * * * *

(E) Dividends paid to an employee stock ownership plan that are deductible under section 404(k).

The controversy in the instant case evolves from the treatment of section 404(k) dividends for purposes of computing earnings and profits. Based on the foregoing regulation, section 404(k) dividends are not taken into account in computing earnings and profits, and therefore a corporate taxpayer may not deduct such dividends in computing its ACE adjustment. Petitioner argues that, contrary to section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., section 404(k) dividends are deductible in computing earnings and profits, and therefore the regulation is invalid. Respondent contends that section 404(k) dividends are essentially equivalent to regular dividends and are not deductible for purposes of computing earnings and profits or for purposes of computing ACE.

The primary purpose for determining the earnings and profits of a corporation is to ascertain the effect of a distribution of property by the corporation to its shareholders. Secs. 301(c), 316(a). A distribution is treated as a dividend to the extent of the corporation's earnings and profits. Sec. 316(a). If a distribution is made in excess of current and accumulated earnings and profits, the excess is treated as a return of capital. Sec. 301(c). Section 316(a) mandates that every distribution is first to be measured against the most recently accumulated earnings and profits; i.e., current year earnings and profits. When current year earnings and profits are exhausted, accumulated earnings and profits are then considered. Sec. 316(a). The parenthetical language in section 316(a)(2) specifically provides that earnings and profits for the current taxable year are to be measured without diminution by reason of distributions made during the current taxable year.

The Internal Revenue Code does not specifically define the phrase "earnings and profits". See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 8.03, at 8–16 (6th ed. 1994). A corporation's earnings and profits are generally computed by making adjustments to its taxable income. See sec. 1.312–6(a) and (b), Income Tax Regs.; see also sec. 312. Petitioner argues that section 404(k) dividends are deductible in computing taxable income and there is no Code provision which requires them to be added back for purposes of computing earnings and profits. Therefore, petitioner concludes that the section 404(k) dividends are deductible in computing earnings and profits.

Petitioner's argument may be summarized as follows: taxable income, as the starting point for determining earnings and profits, is adjusted for: (1) Certain items excluded from taxable income that must be included in computing earnings and profits, e.g., interest on State and municipal obligations; (2) items deducted in computing taxable income that may not be deducted in computing earnings and profits, e.g., the dividends received deduction; (3) certain timing differences, e.g., depreciation; and (4) items not deducted in computing taxable income that may be deducted in computing earnings and profits, e.g., Federal income taxes. According to petitioner, section 404(k) dividends do not fall into any of these categories. Petitioner reasons that category 2 above, items deductible for computing taxable income which may not be deducted in computing earnings and profits, includes artificially created deductions that do not represent actual expenses or expenditures. Petitioner concludes that section 404(k) dividends are not an artificial deduction because they represent an actual outlay of funds. We do not agree with this proposition. A dividend deductible under section 404(k) is, in fact, an artificial deduction because generally, a corporation may not claim a deduction for a cash distribution with respect to its stock. Sec. 311(a).

Petitioner reaches its conclusion, in part, by equating section 404(k) dividends to compensation. Petitioner argues that section 404(k) dividends are akin to compensation because the provision exists under the deferred compensation provisions of the Code, and the benefit is ultimately received by participating employees. We are not persuaded by this analogy. We find no authority for treating section 404(k) dividends in a manner different from regular dividends for purposes of computing earnings and profits.

Petitioner further relies on the treatment of ESOP dividends for accounting purposes as espoused by the American Institute of Certified Public Accountants (AICPA). We are mindful that the Code does not contain a comprehensive definition of earnings and profits. See Williams, "Earnings and Profits", 762 Tax Mgmt. (BNA) A–38 (1992). Nevertheless, we reject petitioner's contention that ESOP dividends reduce earnings and profits. Earnings and profits in the tax sense, although the term does not correspond exactly to taxable income, do not necessarily follow corporate tax accounting

concepts, either. *Commissioner v. Wheeler,* 324 U.S. 542, 546 (1945); *DiLeo v. Commissioner,* 96 T.C. 858, 888 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

We find that the regulation is consistent with the revenue statutes and with the intent of Congress. It is well established that deductions are a matter of legislative grace. *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 (1934); *Estate of Manscill v. Commissioner,* 98 T.C. 413, 418 (1992), supplemented by T.C. Memo. 1992–571. With respect to dividends paid to an ESOP, Congress intended to provide an incentive for corporations to establish an ESOP. Consequently, Congress exercised its legislative powers and provided a deduction for a corporation (1) when its ESOP uses cash dividends to service debt incurred to acquire employer securities, or (2) when the ESOP distributes the cash dividend to the plan beneficiaries within the requisite 90-day period. Sec. 404(k). Nevertheless, Congress also sought to ensure that each corporate taxpayer was in fact paying a fair share of tax. This aim ultimately inspired the creation of the AMT regime. S. Rept. 99–313, at 518–519 (1986), 1986–3 C.B. (Vol. 3) 1, 518–519.

It is not uncommon for Congress to have conflicting goals. *Martin v. Sullivan,* 932 F.2d 1273, 1278 (9th Cir. 1991); *Combined Communications v. U.S. Postal Service,* 891 F.2d 1221, 1223 (6th Cir. 1989); *Tennessee v. Herrington,* 806 F.2d 642 (6th Cir. 1986); *Tierney v. Schweiker,* 718 F.2d 449, 454 (D.C. Cir. 1983). Petitioner's position would further only the first goal, i.e., to facilitate the establishment of ESOP's, and defeat the second goal, i.e., to ensure that each corporate taxpayer pays a fair share of tax. Respondent's position furthers both goals. Petitioner contends that the regulation nullifies the benefit provided by section 404(k), but this is simply not so. Although the benefit is lessened in the current year, it is not totally eliminated.[3] Petitioner may be entitled to claim a credit against regular tax in a subsequent year for the amount of AMT paid in the current year. Sec. 53. Further, it is well established that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations:

---

[3] See *Illinois Cereal Mills, Inc. v. United States,* 74 AFTR 2d 94–6105, 94–2 USTC par. 50,458 (C.D. Ill. 1994).

has been consistently followed * * * whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.

If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.

[*Chevron U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 844–845 (1984); citations omitted.]

The legislative history reveals that Congress intended the result reached by the regulation at issue. The conference report accompanying the Tax Reform Act of 1986, Pub. L. 99–514, 100 Stat. 2085, states:

Adjusted current earnings measures pre-tax income without diminution by reason of any distribution made during the taxable year. * * *. Moreover, no deduction is allowed with respect to a dividend paid. [H. Conf. Rept. 99–841, at II–276 (1986), 1986–3 C.B. (Vol. 4) 1, 276.]

Accordingly, we find that the Commissioner acted within her delegation of authority, and that section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., harmonizes with the revenue statutes and is therefore valid.

*Retroactive Application*

As an alternative to its principal argument, petitioner contends that respondent abused her discretion by providing retroactive application of section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs. Section 1.56(g)–1(d)(3)(iii)(E), Proposed Income Tax Regs., 56 Fed. Reg. 11080, was finalized on March 15, 1991, and it applies to all years ending after December 31, 1989. T.D. 8340, 1991–1 C.B. 4, 6.

In *Anderson, Clayton & Co. v. United States,* 562 F.2d 972 (1977), the Court of Appeals for the Fifth Circuit[4] listed four factors necessary to find an abuse of respondent's discretion with regard to the retroactive application of a regulation. A combination of all four factors may cause a court to limit a regulation to prospective application only. The factors listed in *Anderson* are:

---

[4] In the instant case, appeal lies with the Court of Appeals for the Fifth Circuit.

(1) Whether or to what extent the taxpayer justifiably relied on settled prior law or policy and whether or to what extent the putatively retroactive regulation alters that law;

(2) the extent, if any, to which the prior law or policy has been implicitly approved by Congress, as by legislative reenactment of the pertinent Code provisions;

(3) whether retroactivity would advance or frustrate the interest in equality of treatment among similarly situated taxpayers; and

(4) whether according retroactive effect would produce an inordinately harsh result.

[562 F.2d at 981; fn. ref. omitted.]

Petitioner argues that it satisfies the first factor. However, petitioner has not shown that it justifiably relied on settled law that was *altered* by the regulation. We do not believe that the regulation at issue altered settled law. Almost since the inception of the income tax, earnings and profits have been the device used to measure the taxability of a distribution by a corporation to its shareholders. Revenue Act of 1916, ch. 463, tit. I, sec. 2(a), 39 Stat. 756, 757. As previously discussed, the earnings and profits computation is performed prior to the consideration of the distribution itself. Sec. 316(a)(2). Earnings and profits for the current year are measured without diminution by reason of dividends paid during that year. The regulation confirms this result; it does not alter it.

Petitioner also argues that it satisfies the fourth condition; i.e., that the regulation imposes a harsh result because the ESOP transaction was structured in anticipation that the company would not incur a significant Federal tax liability. Specifically, the note provided for mandatory prepayments of principal based upon a formula related to petitioner's available cash-flow. According to petitioner, if it is required to pay AMT, its cash-flow will be reduced below anticipated levels resulting in: (1) Less working capital available for expansion and growth; (2) a longer period of repayment on the note; (3) greater interest incurred; (4) a reduction in the value of the corporation, and thus reduced equity of the shareholders; (5) a reduced value of the account of each ESOP participant; and (6) a burden on certain employees scheduled to retire in the near future.

We are not convinced that any of the above consequences will occur solely as a direct result of the regulation in question. The regulation was issued in proposed form on May 3,

1990. Sec. 1.56(g)–1(d)(3)(iii)(E), Proposed Income Tax Regs., 55 Fed. Reg. 18636 (May 3, 1990). Petitioner maintains that the transaction would not have been feasible had it been foreseen that section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., would come into effect. Nevertheless, the evidence reveals that the section 404(k) dividends were paid subsequent to the issuance of the proposed regulation; thus, petitioner could have arranged its finances in a manner that would have minimized the effect of the regulation. See *Wendland v. Commissioner,* 79 T.C. 355, 382 n.15 (1982), affd. sub nom. *Redhouse v. Commissioner,* 728 F.2d 1249 (9th Cir. 1984). Further, we are unpersuaded that the alleged above consequences satisfy the fourth condition as envisioned by the Court of Appeals for the Fifth Circuit under *Anderson, Clayton & Co. v. United States, surpa.*[5] We have recognized that cases in which retroactive effect of a regulation amounts to an abuse of discretion are rare and usually occur where the detriment is very severe. *Beneficial Life Ins. Co. v. Commissioner,* 79 T.C. 627, 642 (1982); see also *CWT Farms, Inc. v. Commissioner,* 79 T.C. 1054, 1068–1069 (1982) (retroactive application of a regulation was sustained where the taxpayer unjustifiably relied on a handbook published by respondent for guidance), affd. 755 F.2d 790 (11th Cir. 1985).

We have considered petitioner's remaining arguments and find them to be without merit. Accordingly, we find that respondent did not abuse her discretion in applying the regulation retroactively.

## *Conclusion*

In conclusion, we hold that respondent acted within the delegation of authority and that section 1.56(g)–1(d)(3)(iii)(E), Income Tax Regs., is consistent with the revenue statutes. We further hold that respondent did not abuse her discretion by providing retroactive application of the regulation. Thus,

---

[5] In *Lansons, Inc. v. Commissioner,* 622 F.2d 774 (5th Cir. 1980), affg. 69 T.C. 773 (1978), the Court of Appeals for the Fifth Circuit held that the Commissioner committed an abuse of discretion by retroactively revoking an earlier individualized favorable determination letter approving "qualified trust" status with respect to the taxpayer's profit sharing plan. The court ruled that there had been no change in the material facts affecting the plan, and the taxpayer had relied on the previous determination letter stating that the trust was qualified. As a result of the Commissioner's action, the taxpayer, as well as its employees, would have suffered adverse tax consequences.

section 404(k) dividends are not deductible in computing ACE for purposes of determining AMT.

To reflect the foregoing,

*Respondent's motion will be granted and decision will be entered under Rule 155.*