### STANDARD KNITTING MILLS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9587.

Circuit Court of Appeals, Sixth Circuit.

Feb. 8, 1944.

Stanley Worth, of Washington, D. C. (J. G. Korner, Jr., Stanley Worth, and Blair & Korner, all of Washington, D. C., on the brief), for petitioner.

F. E. Youngman, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and F. E. Youngman, all of Washington, D. C., on the brief), for respondent.

Before HAMILTON, MARTIN, and Mc-ALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The taxpayer, Standard Knitting Mills, Inc., petitions this court to review a decision of the Board of Tax Appeals (now the United States Tax Court) determining a deficiency of $8,301.47 in unjust enrichment tax for 1935, pursuant to tax liability imposed under Section 501(a) (1) of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev. Code, § 700(a) (1), "equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax * * *."

After a hearing upon stipulation of facts, testimony and documentary evidence, the tax tribunal found as a fact that the petitioner had shifted to others the burden of the tax to the extent of 77.8066653 per cent of the processing tax of $0.042 on 2,163,547 pounds of cotton, totaling in money a shift of $70,702.12.

The petitioner had paid processing taxes during the two preceding years, had paid a large sum in processing taxes during the first three months of the tax year in controversy, had placed certain sums in escrow for processing taxes for the months from April to August, inclusive, but had not either paid or placed in escrow any money for processing taxes for the months of September to December, inclusive, of the tax year, 1935. Petitioner filed unjust enrichment returns, first as *estimated;* next *as completed,* in a larger amount; and finally, *as amended,* showing no tax liability. The tax deficiency determined by the Board of Tax Appeals was made upon a recomputation of the tax pursuant to its findings of fact and promulgated opinion.

The Board's findings of fact, which are supported by substantial evidence, together with the opinion, as published in the record embrace 28 pages of clear-cut elucidation of a complicated factual situation. In-

asmuch as, in our judgment, the reasoning of the Board, based upon its findings, justifies the conclusion which was reached, we deem it unnecessary to restate the facts or to rewrite at length the ratiocination of the renamed Tax Court of the United States. The decision of the lower tribunal, including its findings of fact, is published in 47 B.T.A. 295; and may be readily consulted.

The petitioner does not complain that the basic facts were incorrectly found by the Board, but insists that the Board erred in marshaling the facts and in its interpretations and conclusions. The contention is made by petitioner that in marginal computations under Sec. 501(e) (2) of the Act, 26 U.S.C.A.Code, § 700(e) (2), the apportionment of margins as between yarn purchased and yarn spun by the petitioner should have been made on the basis of the relative cost of each and not on the basis of the relative pounds in terms of lint cotton. The controversy as to the appropriate method of computation to be employed arose from the fact that in the conduct of its business, Standard Knitting Mills, Inc. spun yarn from lint cotton purchased by it, and also bought cotton yarn which it commingled with its own-spun yarn by further processing, first into cloth and then into garments, heavyweight union suits and drawers, which it sold to the trade.

The argument of the petitioner was rejected; for the Board held, and we think, properly, that in computing the margins in conformity with the statute to determine the extent to which petitioner shifted to others the processing taxes imposed upon it in 1935 but not paid, there should be included as the "selling price" of "articles with respect to which such Federal excise tax was imposed" the entire amount for which the garments, including waste material resulting from producing yarn from lint cotton, were sold, without any deduction for bad debts; and that the "cost of materials" should include the amount paid for yarn purchased from others, and should exclude losses sustained from dealings in cotton "futures."

The Board held further that to determine margins consistently with the statute, the difference between selling price and cost should be adjusted on a *pound* basis for both the base period and the taxable year, by eliminating the proportion of cotton represented by purchased yarn and dividing the resultant aggregate margin for petitioner's own-processed cotton by the pounds of its own-processed cotton, to calculate the "margin per unit."

The reasoning of the Board seems sound and practical: "We next examine the meaning and application of 'the difference shall be reduced to a margin per unit in terms of the basis on which the Federal excise tax is imposed.' [Title III of Revenue Act of 1936, Section 501(e) (2).] * * * The statute requires that there be ascertained a 'margin per unit' without specifying how it shall be done. That unit is plainly a pound of lint cotton. We therefore seek to learn what part of the aggregate 'difference' or 'profit' is to be ascribed to a pound of lint cotton. In our opinion, that object can be accomplished, and accomplished in compliance with the statute, by first ascertaining the proportion, by weight, which own-processed cotton bears to the entire weight of the articles sold, and by then taking that proportion of the aggregate 'difference' or profit, thus arriving at a figure which, under the statute, is presumed to be the aggregate profit from own-processed cotton alone. Then by dividing such amount of profit presumed attributable to own-processed cotton, by the number of pounds of own-processed cotton, the result is a presumption of margin profit for a pound—the presumed 'margin per unit' described by the statute."

It is not gainsaid that, as contended by the petitioner, a showing of increased profits during the tax period, attributable to lower costs or increased efficiency in manufacturing or to change in the type or grade of the manufactured articles, may rebut the statutory presumption of the shifting of the processing tax to others. The statute distinctly so provides in Section 501(i) (1), 26 U.S.C.A.Int.Rev.Code, § 701(i) (1). Moreover, "if the Commissioner determines that the change in margin was due in part to the tax and in part to the increase in other cost, he shall apportion the change in margin between them." Such is the mandate of the statute. Idem.

See E. Regensburg & Sons v. Helvering, 2 Cir., 130 F.2d 507; Arkwright Mills v. Commissioner of Internal Revenue, 4 Cir., 127 F.2d 465; Epstein v. Helvering, 4 Cir., 120 F.2d 427; C. B. Cones & Son Mfg. Co. v. United States, 7 Cir., 123 F.2d 530. Compare Anniston Mfg. Co. v. Davis, 301 U.S. 337, 351, 57 S.Ct. 816, 81 L.Ed. 1143.

■ But, as pointed out by this court in I. L. Walker Tobacco Co. v. Commissioner of Internal Revenue, 129 F.2d 464, 467, the burden of proof resting upon the taxpayer of showing that the tax was not shifted to others is "an onerous one." In Colonial Milling Co. v. Commissioner of Internal Revenue, 6 Cir., 132 F.2d 505, 509, 510, Judge Allen said: "The statute conditions a recovery under it upon proof that the economic burden of the tax has been borne by the claimant. * * * In conformity with this basic purpose the adverse presumption arising from the margin computation is based upon all the transactions for the statutory periods. While it may be rebutted by any relevant evidence, it cannot be rebutted by presenting details favorable to the petitioner covering only part of the transactions for the periods. * * * If the Board, in view of the gap in the evidence, is not satisfied, as here, that petitioner has borne the burden of the tax, this finding is controlling in this court. Honorbilt Products, Inc., v. Commissioner, 3 Cir., 119 F.2d 797. * * * It must not only be demonstrated that the tax has neither been shifted forward in the sale price nor backward in the cost price, but also that it has not been shifted 'in any manner whatsoever.' Section 902 [7 U.S.C.A. § 644]. The last phrase is sweeping in scope and requires a showing here that the tax has not been shifted considering the transactions of the entire period as a whole."

■ From our study of the record in the instant case, we are convinced that the Board of Tax Appeals was justified in holding that the evidence offered by petitioner was not of such character as to rebut the presumption that the burden of the processing tax was shifted by the petitioner to others. It has been repeatedly held that the findings of the Board of Tax Appeals, supported by substantial evidence, are conclusive unless the record clearly and convincingly requires a contrary conclusion. Rubel v. Commissioner of Internal Revenue, 6 Cir., 74 F.2d 27, 29. Compare Honorbilt Products, Inc. v. Commissioner, supra.

The petitioner urges that the Board erred in denying its motion for reconsideration and rehearing so as to permit the introduction of alleged newly discovered evidence. Had the determination of the tax liability been reached by arbitrary methods, Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 59 L.Ed. 623, cited by petitioner, would be in point. But such was not the case. Nor is the situation here remotely similar to that in Ray W. Torrey Co. v. Commissioner of Internal Revenue, 6 Cir., 84 F.2d 659, where the Board of Tax Appeals was directed to reopen the case and receive additional evidence; for it there appeared that the record was so deficient that justice could not be done the taxpayer.

■ The motion addressed to the Board Member was for a reconsideration of the decision, and "if deemed advisable, that a rehearing be granted in order to correct obvious errors in the application of basic principles of law and evidence on which said decision rests." The motion should be characterized as more in the nature of an ordinary petition for rehearing than as a motion for a retrial on newly discovered evidence. The motion sets forth four grounds, three of which present issues of law. The fourth is a charge that "the Board erred in rejecting petitioner's rebuttal evidence, which was uncontroverted, *although it found facts which give recognition thereto.*" (Italics supplied.)

■ The first suggestion that the motion should be considered as based in part upon *newly discovered evidence* was given at the hearing upon the motion when petitioner's attorney stated that certain documentary evidence (consisting of a circular letter from the Underwear Institute of America to its members, relating to the extent to which labor costs were increased under N.R.A., and two letters of transmittal from petitioner to its customers) had come to light. These documents had been found in the personal file of petitioner's president, who had testified in the case. They were located when he returned to Knoxville from Washington, in which city he served as a member of the War Labor Board.

Petitioner's attorney urged that the previously requested rehearing should be granted to permit the introduction of these letters, "together with a small amount of testimony which would correlate the documentary evidence with the Court's findings and implement said findings."

There was no abuse of discretion by the Board of Tax Appeals in the denial of petitioner's motion. See Rubel v. Commissioner of Internal Revenue, supra; Freeman-Hampton Oil Corporation v. Commissioner of Internal Revenue, 5 Cir., 65 F.2d 456, 457.

See also Scott v. Commissioner of Internal Revenue, 8 Cir., 117 F.2d 36, 40, where it was wittily said: "Applications for rehearing on the ground of newly discovered evidence are not favored, and to warrant a reopening of the case it must appear that the evidence is in fact newly discovered and not merely that the importance of it is newly discovered."

Though zealous advocacy is· not blameworthy, no erroneous obstinacy inheres in the refusal of a judge to hear reiterated argument, once his ear has become deaf to persuasion. The measure of his duty is sound discretion in saying, "Hold enough !"

The decision of the Board of Tax Appeals is affirmed.