ESTATE OF JOHN D. MANSCILL, DECEASED, FRANCES D. MANSCILL WEST, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Manscill v. Commissioner
Docket No. 32405-86
United States Tax Court
T.C. Memo 1992-571; 1992 Tax Ct. Memo LEXIS 588; 64 T.C.M. (CCH) 905; T.C.M. (RIA) 92571; September 24, 1992, Filed Petitioner's motion for reconsideration will be denied; decision will be entered under Rule 155.
Decedent died testate. On decedent's estate tax return, the executor allocated amounts between Fund A and Fund B, and elected to treat Fund B as qualified terminable interest property (QTIP) for the surviving spouse. The parties agreed that Fund A qualifies for the marital deduction. In Manscill I, this Court held that Fund B did not qualify for QTIP treatment. Petitioner filed a timely motion for reconsideration, requesting that the Court conclude that the formula clause in decedent's will is not subject to sec. 403(e)(3), Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172; that the unlimited marital deduction is available to decedent; and that petitioner should be allowed to reallocate amounts from Fund B to Fund A in order to take full advantage of the unlimited marital deduction. Petitioner did not raise this issue until the motion for reconsideration. Held, petitioner's motion for reconsideration is denied. This Court will not consider issues which could have been raised before the case was tried and submitted and before the *589 opinion was issued. Michael W. McGrath and Charles Speed Gray, for petitioner. Aubrey C. Brown, for respondent. CHABOT, Judge. CHABOT
SUPPLEMENTAL MEMORANDUM OPINION AND FINDINGS OF FACT This matter is before us on petitioner's motion under Rule 161[1] for reconsideration of our opinion in the above-entitled case set forth at 98 T.C. 413 (1992) (hereinafter sometimes referred to as Manscill I). In Manscill I we made findings of fact which we adopt for purposes of this supplemental opinion. However, for clarity, we begin with a brief summary of some of the already-found facts, and also make additional findings of fact, pertinent to this supplemental opinion.
FINDINGS OF FACT John Davis Manscill, decedent, died testate on December 6, 1982. Decedent was survived by his widow, Frances, and their daughter, Nicole. Decedent's will was signed on February 22, 1979. The *590 will designates Nicole as Trustee. The will designates Frances as successor Trustee if Nicole is incapacitated or incapable of serving as Trustee for any reason. When the Federal estate tax return was filed Frances was serving as executor. The will provides that the residual estate is bequeathed to Nicole as Trustee and is to be divided into Fund A and Fund B. Fund A is "to qualify for the marital deduction allowed to my estate." Fund B is to provide primarily for Frances' benefit but also may, with Frances' prior approval, be invaded for Nicole's support. Frances, as executor of the will, timely filed a Federal estate tax return (Form 706) on September 6, 1983, for petitioner. On the Federal estate tax return, decedent's adjusted gross estate is listed as $ 2,086,253. On Schedule M of the Federal estate tax return Frances allocated $ 663,247 to Fund A and $ 1,032,499 to Fund B. On the Federal estate tax return Frances elected to treat Fund B as a QTIP under section 2056(b)(7), [2] and took a marital deduction for $ 379,879 of other interests passing to Frances, and for the amounts in Fund A and Fund B. *591 In the notice of deficiency, respondent disallowed QTIP treatment for the amount allocated to Fund B, and determined a deficiency against petitioner in the amount of $ 302,732. Petitioner timely petitioned this Court for a redetermination of this deficiency. When the instant case came on for trial, each side asked that its pretrial memorandum be filed as a supplement to that side's oral opening statement; both sides' pretrial memorandum were so filed. Petitioner's pretrial memorandum begins as follows: The only issue to be submitted to the Court is the question of whether that portion of the decedent's estate designated in his Will as "Fund B" constitutes qualified terminable interest property as defined in I.R.C. Section 2056(b)(7) and, therefore, is deductible in determining the taxable estate as provided in Section 2056(a). The Respondent's notice of deficiency is based upon the finding stated therein that "Fund B does not meet the requirements of Section 2056 of the Internal Revenue Code for qualified terminable interest property". (The other adjustment in the notice of deficiency, concerning insurance proceeds in the amount of $ 10,000, was not assigned as error in the *592 Petition and is conceded by the Petitioner.) The only potential witness for the Petitioner is James B. Brien, Jr., who filed the Petition and who is the scrivener of the Will. If Mr. Brien is called to testify, he will withdraw as counsel of record. His testimony would be a recitation of the facts and circumstances surrounding the drafting and execution of the Will, particularly his discussion with the decedent which demonstrates the decedent's intent to provide the maximum possible estate for his widow if he predeceased her and that any provision therein for their daughter was incidental and subject entirely to the mother's prior approval. There could be no distribution for the daughter's benefit against the will of the surviving spouse or in opposition to her interest. The remainder of petitioner's pretrial memorandum discusses only the QTIP provisions and the application of the parol evidence rule to proposed testimony that would show decedent's intent with regard to the qualification of Fund B for QTIP treatment. Respondent's pretrial memorandum includes the following: Prior to the Economic Recovery Act of 1981 (ERTA), a limited marital deduction from the gross estate *593 was permitted for a property interest passing to a surviving spouse as a result of death. ERTA removed the quantitative limits on the marital deduction in certain cases. The "new" unlimited marital deduction applied only to individuals dying after December 31, 1981. H died on December 6, 1982. However, the transitional rules provided by ERTA § 403(e) further limited the application of the "new" unlimited marital deduction in the case of estate tax. The transitional rule applies if a will was executed before September 13, 1981 and was not reexecuted after that date to change the marital bequest to refer specifically to the "new" unlimited marital deduction, or the state of the decedent's domicile did not enact a statute construing old formula bequests as referring to the unlimited marital deduction. H's will was executed February 22, 1979. The transitional rule provided that the limited marital deduction would continue to apply to individuals dying after December 31, 1981, if their will provided for marital bequests determined by a "formula expressly providing that the spouse is to receive the maximum amount of property qualifying for the marital deduction allowable by federal *594 law". The transitional rule was intended to prevent distortion of the testator's intent solely by virtue of a change in federal tax law. H. R. Rep. No. 97-201, 97th Cong. 1st Sess. 161 (1981), reported in 1981-2 C.B. 378, states: The committee understands that many existing wills and trusts include a maximum marital deduction formula clause under which the amount of property transferred to the surviving spouse is determined by reference to the maximum allowable marital deduction. . . . (T)he committee is concerned that many testators, although using the formula clause, may not have wanted to pass more than the greater of $ 250,000.00 or one-half of the adjusted gross estate (recognizing the prior law limitation) to the spouse which might otherwise occur under the committee's adoption of an unlimited marital deduction. Accordingly, the committee provided that the "new" unlimited marital deduction would apply only to transfers resulting from a will executed before thirty days after the enactment of ERTA, if the marital bequest was not reexecuted or remedial state legislation was not enacted. H's will was executed about two years prior to ERTA and was *595 not reexecuted. As far as we have been able to determine, Kentucky did not enact a remedial statute pursuant to ERTA § 403(e)(3)(D). Article III(7) of H's will provides "only property which qualified for the marital deduction shall be allocated to Fund A." Article V(11) of H's will provides "it is expressly intended that Fund A shall be available for the estate tax marital deduction and all questions applicable to Fund A shall be resolved accordingly." Article III(2) of H's will provides that Fund A "shall not exceed the maximum marital deduction allowed to my estate as provided in Section 2056(c) of the Internal Revenue,". [sic] At the time H executed his will the maximum limit on a marital deduction was the greater of $ 250,000.00 or fifty percent of the value of the adjusted gross estate. I.R.C. § 2056(c)(1). (Section 2056(c) was repealed by ERTA.) In our opinion, H's will is clearly the type of document to which the transitional rule provided by ERTA § 403(e) was intended to require additional action in order to permit the unlimited marital deduction claimed by the petitioner. Since no additional action was taken by H after ERTA, the transitional rule prevents H's estate *596 from having an allowable unlimited marital deduction. Petitioner's counsel's oral opening statement includes the following: A short reference to history I think, will be helpful in assisting the Court to recognize the background of this case. On February 22, 1979, John Manscill signed a Will, pursuant to which he bequeathed a fixed dollar marital share to a power of appointment trust identified in his Will as Fund A. And he bequeathed the residue of his estate to a residuary life interest trust, identified in his Will as Fund B. This Will was prepared at the time the Rules of the Tax Reform Act of 1976, were applicable. That particular act provided for a maximum marital deduction, equal to the greater of one half of the decedents gross estate, or $ 250,000. It further provided for an equivalent amount exemption in the amount of $ 120,000. Subsequent to the signing of the Will by Mr. Manscill, congress enacted a Tax Provision referred to as E.R.T.A., the Economic Recovery and Tax Act. Pursuant to E.R.T.A., congress increased the amount that could be deductable as a marital transfer from the amounts referred to a moment ago to an unlimited amount. More importantly to this *597 particular case, Congress also enacted at that time the provisions relating to the qualification of property for the marital deduction, which would pass to a trust where the income was -- where the surviving spouse had a qualifying income interest. This is known as the Q-Tip trust. Not to impose their intent on the customary intent of anyone, Congress when enacting E.R.T.A. provided for a Transitional Rule. This Transitional Rule related to so called marital deduction formula clauses, which were couched in terms, similar to, "I bequeath to my surviving spouse a maximum marital share of my estate, and so forth" Now, even though the unlimited marital deduction could not be claimed under the Transitional rules, the Internal Revenue Service ruled that a Q-Tip election could be made for a qualifying trust and thereby increase the amount of the marital deduction. Again, although under the Transitional Rule, the marital deduction could not be increased to an unlimited amount, Congress provided a means for increasing the marital deduction by electing to treat a qualifying trust as a Q-Tip trust. And I would like to point out to the Court that the Q-Tip election is an option available *598 to the decedent's personal representative. It is not an action taken by the decedent, in the testamentary document that he may have signed. The remainder of petitioner's oral opening statement, and all of respondent's oral opening statement, deal with the QTIP provisions and the parol evidence rule. The briefs of both sides deal with the QTIP provisions and the parol evidence rule. OPINION Petitioner does not dispute our Findings of Fact in Manscill I. Also, petitioner does not ask us to reconsider our holding in Manscill I that Fund B is not a QTIP. Instead, petitioner wishes to reallocate amounts from Fund B to Fund A [3] (the parties had agreed that Fund A qualifies as a bequest for which the marital deduction is allowable). To this end, petitioner moves that we reconsider our opinion in Manscill I and rule that the provision in decedent's will defining the amount that is to go into Fund A is not a "formula clause" within the application of section 403(e)(3)(B) of the Economic Recovery Tax Act of 1981 (Pub. L. 97-34, 95 Stat. 1972, 305; hereinafter sometimes referred to as the ERTA Transitional Rule). Petitioner contends we should grant its motion because (1) the formula *599 clause issue can be fairly disposed of on the record, (2) this issue was raised by respondent, and (3) the interests of justice would be served by granting the motion. Petitioner also relies on our opinion in Estate of Levitt v. Commissioner, 95 T.C. 289 (1990), which was not filed until September 13, 1990, after the instant case was submitted and the briefs herein were filed. *600 Respondent argues that petitioner's motion should be denied because (1) petitioner's motion is based on new legal theories, (2) petitioner has failed to move to amend the pleadings to raise these new legal theories, (3) a second trial would have to be held to take evidence relevant to these theories, and (4) petitioner in effect conceded all other theories when petitioner took the position that the QTIP issue is the only issue to be submitted to the Court. Respondent also notes that petitioner did not act until more than 1-1/2 years after Estate of Levitt was issued. We agree with respondent's conclusion. The granting of a motion for reconsideration under Rule 161[4] rests within the discretion of the Court. Leuhsler v. Commissioner, 963 F.2d 907, 911 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Louisville & N.R. Co. v. Commissioner, 641 F.2d 435, 443-444 (6th Cir. 1981), affg. on this issue 66 T.C. 962 (1976); Estate of Halas v. Commissioner, 94 T.C. 570, 574 (1990); Vaughn v. Commissioner, 87 T.C. 164, 166 (1986). *601 The Court generally denies such a motion unless unusual circumstances or substantial error is shown. Estate of Halas v. Commissioner, id.; Vaughn v. Commissioner, id. at 167; Estate of Bailly v. Commissioner, 81 T.C. 949, 951 (1983); Robin Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), affd. on this issue 510 F.2d 43, 45 n. 1 (1st Cir. 1975). It is the policy of this Court to try all the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation. Markwardt v. Commissioner, 64 T.C. 989, 998 (1975), and cases there cited. See Standard Knitting Mills v. Commissioner, 141 F.2d 195, 198-199 (6th Cir. 1944), affg. 47 B.T.A. 295 (1942). Cf. Naftel v. Commissioner, 85 T.C. 527, 535 (1985). *602 We conclude that petitioner's motion should be denied for the following reasons. Firstly, petitioner does not contend that the findings or conclusions in Manscill I are incorrect in any way. Thus, there is no substantial error in Manscill I which should be corrected. Secondly, at trial and on brief petitioner chose to limit its case to the QTIP issue, and did so even though respondent plainly brought the possibility of an ERTA Transitional Rule argument to petitioner's and the Court's attention before the trial. Indeed, as our Findings of Fact show, petitioner specifically took the position in its counsel's opening statement that it was not entitled to the unlimited marital deduction. This was the way we understood petitioner's position at that time and so, in Manscill I we stated as follows: "We do not face in the instant case the specific problems (transitional rule) we dealt with in Estate of Levitt v. Commissioner, 95 T.C. 289 (1990)." Manscill I, 98 T.C. at 424 (1992). Petitioner having thus "deliberately left other possible arrows locked in [its] quiver" (see Estate of Fusz v. Commissioner, 46 T.C. 214, 215 (1966)), *603 we do not believe it appropriate to allow petitioner to reconsider its tactical or strategic choices at this late date. Thirdly, even if our opinion in Estate of Levitt may be said to have clarified the ERTA transitional rule situation, petitioner's extended delay after our opinion in Estate of Levitt was published suggests that petitioner merely wanted two bites at the apple. For more than 1-1/2 years after Estate of Levitt, petitioner was content to rest on its QTIP argument and allocate the estate's assets between Fund A and Fund B as petitioner had contended for at trial. Now that petitioner has lost the QTIP argument, petitioner contends for the first time that its allocation of assets between the two funds was wrong, and that it should be allowed to make an argument entirely different from the one that it had presented at trial and on brief. We are not convinced that the interests of justice would be served (rather than hindered) by acceding to petitioner's motion. Fourthly, the trial was conducted, and evidence offered, as to decedent's intent with regard to the workings of Fund B. No evidence was offered for the purpose of exploring decedent's intent *604 as to Fund A. The question of whether such evidence would be relevant is an open one in this Court. Compare the concurring opinions in Estate of Levitt v. Commissioner, 95 T.C. at 307-311 and 311-314. Under these circumstances, if we were to grant petitioner's motion, then we would have to have an additional trial to allow the parties an opportunity to present evidence as to decedent's intent. (See, in this regard, Miller v. Commissioner, T.C. Memo. 1989-461 n. 22.) Respondent has already asked for such an additional trial if petitioner's motion were to be granted. Also, there may have to be an additional trial to determine how much should be allocated to Fund A under petitioner's new theory. Petitioner's motion would result in piecemeal and protracted litigation, which is against this Court's policy. See Robin Haft Trust v. Commissioner, 62 T.C. at 147; Pierce Oil Corporation v. Commissioner, 30 B.T.A. 469, 475 (1934). We conclude that petitioner's motion to reconsider should be denied. Petitioner directs our attention to Estate of Seykota v. Commissioner, T.C. Memo. 1991-541, *605 to support petitioner's contention that the motion should be granted. The motion for reconsideration in that case did not involve new legal theories being raised or the development of new law in regard to an issue in the case. Estate of Seykota v. Commissioner is not analogous to the instant case. Petitioner also directs our attention to section 1.451-1(a), Income Tax Regs., and section 20.6081(c), Estate Tax Regs., as supporting petitioner's motion for reconsideration. These regulations do not lend any support to petitioner's contentions. The first regulation, section 1.451-1(a), Income Tax Regs., states that a taxpayer should, if within the period of limitations, file an amended return if the taxpayer ascertains that an item was improperly excluded from gross income, or improperly included in gross income. This regulation deals with timing issues and is not relevant to the allocations made by the executor on decedent's Federal estate tax return. The second regulation, section 20.6081(c), Estate Tax Regs., states that, with certain exceptions, "the [estate tax] return cannot be amended after the expiration of the extension period although supplemental information may subsequently *606 be filed that may result in a finally determined tax different from the amount shown as the tax by the executor on the return". This regulation gives guidance in regard to section 6081, which provides for an extension of time for filing any return. Petitioner contends that the new legal theory is "supplemental information", and states that the Court should grant petitioner's motion "in the spirit of these regulations". We do not agree, and we conclude that this regulation is not relevant to the motion for reconsideration. We hold for respondent. Petitioner's motion for reconsideration will be denied; decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 in effect for the date of decedent's death.↩
3. Attached to petitioner's "Supplemental Memorandum in Support of Motion for Reconsideration of Findings or Opinion" is an affidavit by Frances, dated June 17, 1992, stating that the trusts established under decedent's will have not been funded, and that there has been no allocation of the assets of the estate between the trusts. Petitioner does not specifically state what amounts petitioner would reallocate from Fund B to Fund A. Petitioner's motion states that Nicole should be allowed to allocate to Fund A "an unlimited marital deduction amount less that amount sheltered by the unified and state death tax credits allowed against the tax".↩
4. RULE 161. MOTION FOR RECONSIDERATION OF FINDINGS OR OPINION Any motion for reconsideration of an opinion or findings of fact, with or without a new or further trial, shall be filed within 30 days after a written opinion or the pages of the transcript that contain findings of fact or opinion stated orally pursuant to Rule 152 (or a written summary thereof) have been served, unless the Court shall otherwise permit.↩