130 T.C. No. 17

UNITED STATES TAX COURT

SANTA FE PACIFIC GOLD COMPANY AND SUBSIDIARIES, BY AND THROUGH
ITS SUCCESSOR IN INTEREST, NEWMONT USA LIMITED, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22956-06.                    Filed June 25, 2008.


        P used the percentage depletion method to
calculate depletion deductions for its mine, M, which
was placed in service on or before Dec. 31, 1989.  P
was subject to the alternative minimum tax but did not
make adjusted current earnings (ACE) adjustments under
sec. 56(g)(4)(C)(i) or (F)(ii), I.R.C, for depletion
for M even though M's adjusted basis had been fully
depleted for cost depletion purposes.  When calculating
the sec. 57(a)(1), I.R.C., preference for M, P included
development costs capitalized under sec. 56(a)(2),
I.R.C., in M's adjusted basis.

        <u>Held</u>:  Sec. 56(g)(4)(F)(i), I.R.C., does not
preclude the sec. 56(g)(4)(C)(i), I.R.C., ACE
adjustment from applying to depletion.

        <u>Held</u>, <u>further</u>, unamortized sec. 56(a)(2), I.R.C.,
costs are not included in M's adjusted basis for

purposes of calculating sec. 56(g)(4)(C)(i), I.R.C., ACE adjustments for depletion.

Held, further, because of R's concession, unamortized sec. 56(a)(2), I.R.C., costs may be included in M's adjusted basis for purposes of calculating sec. 57(a)(1), I.R.C., preferences for the years at issue.

Held, further, to the extent that the same amounts are not also treated as sec. 57(a)(1), I.R.C., preferences, P is required to make a sec. 56(g)(4)(C)(i), I.R.C., ACE adjustment for depletion for M.

David D. Aughtry, Arnold B. Sidman, and William O. Grimsinger, for petitioner.

Curt M. Rubin and Jennifer S. McGinty, for respondent.

OPINION

GOEKE, Judge: This case is before the Court on the parties' cross-motions for partial summary judgment. After concessions,[1] the primary issue for decision, for purposes of adjusting petitioner's alternative minimum taxable income (AMTI) under the alternative minimum tax (AMT), is whether section 56(g)(4)(C)(i)[2]

---

[1] Respondent concedes the portions of the adjusted current earnings (ACE) adjustments set forth in the notice of deficiency attributable to petitioner's Twin Creeks Mines made pursuant to sec. 56(g)(4) in the amounts of $3,659,182, $12,676,115, $22,655,817, and $6,574,253 for the years ending Dec. 31, 1994, Dec. 31, 1995, Dec. 31, 1996, and May 5, 1997, respectively.

[2] Unless otherwise indicated, all section references are to
(continued...)

limits the depletion deduction for a mine placed in service on or before December 31, 1989, specifically petitioner's Mesquite Mine, to depletion deductions allowed in computing earnings and profits, or whether section 56(g)(4)(F) alone governs all adjusted current earnings (ACE) adjustments relating to depletion regardless of when the property is placed in service. We must also decide whether unamortized mine development costs that must be capitalized and amortized under section 56(a)(2) (unamortized section 56(a)(2) costs) are included in the adjusted basis of depletable property, specifically the Mesquite Mine, for purposes of determining (1) the amount of section 57(a)(1) preferences, and/or (2) the amount of section 56(g)(4)(C)(i) ACE adjustments for depletion.

We hold that unamortized section 56(a)(2) costs are not included in the adjusted basis of depletable property for purposes of determining the amount of section 56(g)(4)(C)(i) ACE adjustments for depletion. In addition, because respondent conceded that unamortized section 56(a)(2) costs may be included in the adjusted basis of depletable property for purposes of determining section 57(a)(1) preferences, petitioner is not liable for any increases in its AMT liability that might

---

[2](...continued)
the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

otherwise arise from our holding on this issue.  We hold further that section 56(g)(4)(C)(i) applies to depletion of the Mesquite Mine to the extent that the amount by which the depletion deductions attributable to the Mesquite Mine exceeded the mine's adjusted basis during the years at issue is not also treated as a section 57(a)(1) preference.

## Background

The record establishes or the parties do not dispute the following facts.

Petitioner is the successor in interest to the Santa Fe Pacific Gold Corp. and an alternate agent for the Santa Fe Pacific Gold Corp. & Subs. Consolidated Group.  At the time it filed its petition, petitioner's principal place of business was Denver, Colorado.

Petitioner owned several gold mines during the taxable years ending December 31, 1994, 1995, and 1996, and May 5, 1997 (the years at issue), that were placed in service on or before December 31, 1989.  Petitioner's Mesquite Mine was placed in service in September 1981, and petitioner's two Twin Creeks Mines were placed in service in December 1987 and March 1989.

Petitioner calculated its depletion deductions using the percentage depletion method under section 613, as opposed to the cost depletion method under section 612, for regular tax purposes for all of its mines during the years at issue.  Petitioner was

subject to the AMT during the years at issue, and it included section 57(a)(1) preferences for depletion when calculating its AMTI. When calculating its ACE adjustment, petitioner did not make any adjustments under section 56(g)(4)(C)(i) for mines that were placed in service on or before December 31, 1989. Petitioner incurred development costs under section 616(a) for its mines, which it capitalized and amortized over a 10-year period as required by section 56(a)(2).

On November 13, 2006, respondent issued a notice of deficiency to petitioner for the years at issue. Respondent made the following changes to petitioner's ACE adjustments for depletion:[3]

| Year | Reported ACE | Adjusted ACE |
|------|-------------|-------------|
| 1994 | $6,119,535 | $12,676,873 |
| 1995 | 18,517,208 | 42,115,880 |
| 1996 | 3,004,144 | 44,790,687 |
| 1997 | 2,378,500 | 13,738,815 |

Petitioner timely petitioned the Court to review respondent's determinations. The parties filed cross-motions for partial summary judgment on the issue of whether section 56(g)(4)(C)(i) requires ACE adjustments for depletion for mines placed in service on or before December 31, 1989. Because one of petitioner's arguments is that section 57(a)(1) precludes the

---

[3] Respondent also made other adjustments in the notices of deficiency that the Court will address in a separate opinion.

application of section 56(g)(4)(C)(i) to depletion, we must also determine whether sections 57(a)(1) and 56(g)(4)(C)(i) perfectly overlap when applied to depletion.  This in turn depends on whether unamortized section 56(a)(2) costs are included in the adjusted basis of depletable property for purposes of determining section 57(a)(1) preferences and/or section 56(g)(4)(C)(i) ACE adjustments.  Respondent concedes that petitioner correctly reported the portions of the ACE adjustments attributable to the Twin Creeks Mines.  The Twin Creeks Mines were not subject to the section 56(g)(4)(C)(i) ACE adjustment because their adjusted bases were greater than the depletion deductions attributable to them.  See infra pp. 8-9.  The parties filed memoranda in support of their respective motions and in opposition to the opposing party's motion, and the Court held a hearing on these issues in Washington, D.C.

## Discussion

### I.  Summary Judgment

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine issue of any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  The parties agree that there

are no questions regarding any material facts related to the issue before the Court and that the issue is a pure question of law that should be resolved by summary judgment.

II.  Statutory Background

Congress enacted the AMT as a part of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2085, in order to prevent taxpayers with substantial economic income from avoiding significant tax liability by using exclusions, deductions, and credits.  See Snap-Drape, Inc. v Commissioner, 105 T.C. 16, 21 (1995), affd. 98 F.3d 194 (5th Cir. 1996).  The AMT equals the excess of the tentative minimum tax over the regular tax for the year.  Sec. 55(a).  For corporations, the tentative minimum tax is 20 percent of so much of AMTI as exceeds the exemption amount, reduced by the AMT foreign tax credit for the year.  Sec. 55(b)(1)(B).  AMTI is the taxable income of the taxpayer for the year determined with the adjustments provided in sections 56 and 58 and increased by the amount of items of tax preference in section 57.  Sec. 55(b)(2).

Section 56(g)(1) provides that the AMTI of any corporation for the taxable year shall be increased by 75 percent of the excess of the corporation's ACE over the corporation's preadjustment AMTI, which is the taxpayer's AMTI determined without regard to section 56(g) or the alternative tax net operating loss deduction.

A.  Section 56(g)(4)(C)(i)

Section 56(g)(4)(C)(i) provides that in determining ACE, no deduction is allowed for any item that would not be deductible for any taxable year for purposes of computing earnings and profits.  Section 56(g)(5)(A) provides that the term "earnings and profits" means earnings and profits computed for purposes of subchapter C.  Section 1.312-6(c)(1), Income Tax Regs., provides:

> In computing the earnings and profits for any period beginning after February 28, 1913, the only depletion or depreciation deductions to be considered are those based on (i) cost or other basis, if the depletable or depreciable asset was acquired subsequent to February 28, 1913 * * *.  Thus, discovery or percentage depletion under all revenue acts for mines and oil and gas wells is not to be taken into consideration in computing the earnings and profits of a corporation. [Emphasis added.]

Sections 611 through 614 govern deductions allowable for depletion of natural resources.  Section 613 allows taxpayers deductions for depletion that are based on a percentage of gross income, regardless of the adjusted basis of the property, if the deductions are larger than they would be under the cost depletion method.  Section 612 governs cost depletion, an alternate method of calculating depletion deductions using the adjusted basis of the property provided in section 1011.  See also sec. 1.611-2(b)(2), Income Tax Regs.

When the AMT applies, section 56(g)(4)(C)(i) offsets the permanent benefit of the percentage depletion method by requiring an ACE adjustment if a taxpayer's depletion deduction exceeds the

adjusted basis of the property.  The section 56(g)(4)(C)(i) ACE adjustment equals the excess, if any, of the taxpayer's current depletion deduction for the property for regular tax purposes over the aggregate of the deductions allowable for the current year and for future years when calculating earnings and profits. Section 1.56(g)-1(d)(1), Income Tax Regs., provides:

> no deduction is allowed in computing adjusted current earnings for any items that are not taken into account in determining earnings and profits <u>for any taxable year</u> * * *.  Thus, <u>to the extent an item is, has been, or will be deducted for purposes of determining earnings and profits, it does not increase adjusted current earnings</u> in the taxable year in which it is deducted for purposes of determining pre-adjustment alternative minimum taxable income. * * * [Emphasis added.]

Because a taxpayer is never allowed depletion deductions in excess of the adjusted basis of the property under the cost depletion method, section 56(g)(4)(C)(i) requires an ACE adjustment of the amount by which the depletion deduction for the property exceeds the adjusted basis of the property.  However, to the extent that the taxpayer has an adjusted basis in its property, section 56(g)(4)(C)(i) does not require an ACE adjustment even if the taxpayer deducts an amount for depletion that exceeds what it would be allowed under the cost depletion method because the excess deduction will be allowed as a deduction under the cost depletion method in a future year.

B.  Section 56(g)(4)(F)(i)

For a taxpayer subject to the AMT owning mines placed in service after December 31, 1989, section 56(g)(4)(F)(i) offsets both the temporary and the permanent benefits of the percentage depletion method:

(F) Depletion.--

(i) In general.--The allowance for depletion with respect to any property placed in service in a taxable year beginning after December 31, 1989, shall be cost depletion under section 611.

This requires an ACE adjustment for the difference between a taxpayer's depletion deduction and the amount that would be allowed if the taxpayer calculated its depletion deduction using the cost depletion method.

To the extent that both section 56(g)(4)(C)(i) and (F)(i) would otherwise require ACE adjustments (as would be the case if a mine was placed in service after December 31, 1989, and its adjusted basis is less than the depletion deduction), the taxpayer must make an upward ACE adjustment only under section 56(g)(4)(F)(i).  See infra pp. 18-19.  When a mine's adjusted basis is fully depleted, the ACE adjustments under section 56(g)(4)(C)(i) and (F)(i) will both equal the deduction allowed under the percentage depletion method.  Because the adjustment under section 56(g)(4)(F)(i) will offset the benefit of deducting

an amount that would not be deductible for purposes of computing

earnings and profits, section 56(g)(4)(C)(i) does not apply.[4]

C. Section 57(a)(1)

Section 57(a)(1) is also designed to offset the permanent

benefit of the percentage depletion method. It includes as a tax

preference item that must be added to AMTI under section

55(b)(2)(B):

> (1) Depletion.--With respect to each property (as defined in section 614), the excess of the deduction for depletion allowable under section 611 for the taxable year over the adjusted basis of the property at the end of the taxable year (determined without regard to the depletion deduction for the taxable year). * * *

Section 614(a) defines "property" as "each separate interest

owned by the taxpayer in each mineral deposit in each separate

tract or parcel of land."

Section 1.57-1(h)(3), Income Tax Regs., which further

explains section 57(a)(1), provides:

> (3) Adjusted basis. For the determination of the adjusted basis of the property at the end of the taxable year see section 1016 and the regulations thereunder.

Therefore, to the extent that a taxpayer's depletion

deduction exceeds the adjusted basis of the property determined

under section 1016, the taxpayer has a preference item under

---

[4] Examples 1-4 in the appendix to this Opinion illustrate the operation of sec. 56(g)(4)(C)(i) and (F)(i) and the views of the parties and the Court on whether sec. 56(g)(4)(C)(i) applies to depletion.

section 57(a)(1) that will be added to its AMTI under section 55(b)(2).

   D.   Unamortized Section 56(a)(2) Costs

Section 616(a) allows a taxpayer to currently deduct mine development costs.  A taxpayer's election under section 616(b) to deduct those costs ratably according to units of ore sold may defer a portion of the deduction.  However, section 291(b) provides that, for corporations, the amount that would otherwise be deductible under section 616(a) must be reduced by 30 percent, but that the amount not allowable as a current deduction may be amortized and deducted ratably over a 60-month period.  As an alternative, section 59(e) provides that a taxpayer may elect for regular tax purposes to amortize the expenditures that would otherwise be allowed as a deduction under section 616(a) over 10 years without regard to section 291.

Section 56(a)(2) provides that if a taxpayer is subject to the AMT, when calculating AMTI the taxpayer must amortize over 10 years any mine development costs that it would otherwise have deducted currently under section 616(a), without regard to section 291.  However, if a taxpayer makes an election under section 59(e), section 56(a)(2) does not apply.

A key issue in this case is whether unamortized section 56(a)(2) costs are included in the adjusted basis of depletable

property when calculating section 56(g)(4)(C)(i) ACE adjustments and section 57(a)(1) preferences.

## III.  The Positions of the Parties

Petitioner argues that section 56(g)(4)(C)(i) does not apply to depletion because ACE adjustments for depletion may be made only under section 56(g)(4)(F)(i).  Because section 56(g)(4)(F)(i) does not apply to mines placed in service on or before December 31, 1989, petitioner argues that no ACE adjustment should be made for depletion for mines placed in service on or before December 31, 1989.  In support of this argument, petitioner asserts that:  (1) Congress created a "grace period" to protect mines placed in service on or before December 31, 1989, from all ACE adjustments for depletion; (2) the rules of statutory construction show that section 56(g)(4)(C)(i) does not apply to depletion; (3) the legislative history of section 56(g)(4) confirms that section 56(g)(4)(C)(i) does not apply to depletion; (4) the statutory scheme of section 56 makes sense only if section 56(g)(4)(C)(i) does not apply to depletion; and (5) applying section 56(g)(4)(C)(i) to depletion would duplicate the adjustment for tax preferences under sections 55(b)(2) and 57(a)(1).

Respondent argues that on its face section 56(g)(4)(C)(i) applies to both depletable and other property regardless of when it is placed in service, while section 56(g)(4)(F)(i) applies

only to depletable property placed in service after December 31, 1989.  While subparagraphs (C)(i) and (F)(i) overlap in some cases, they are not in conflict or ambiguous.  Therefore, respondent argues that there is no need to resort to rules of statutory construction or legislative history; but even if we were to use these tools, they would not alter the plain meaning of the statute.

Respondent further argues that section 56(g)(4)(C)(i) does not merely duplicate the adjustment for tax preferences in sections 55(b)(2) and 57(a)(1) because sections 56(g)(4)(C)(i) and 57(a)(1) treat unamortized section 56(a)(2) costs differently.

IV.  The "Grace Period" Argument

Petitioner first argues that when Congress enacted the AMT, it included a grace period that protects mines placed in service on or before December 31, 1989, from any ACE adjustments resulting from depletion deductions.  Petitioner claims that this intention is found in section 56(g)(4)(F)(i), quoted above. Petitioner argues that because the limitation "after December 31, 1989," also applies to six other specifically identified items in section 56(g)(4), Congress must have intended for this "grace period" to be an integral part of the AMT scheme as a whole. Therefore, petitioner believes that section 56(g)(4)(C)(i) does not apply to depletable property placed in service on or before

December 31, 1989, either.  Petitioner argues that if we do not extend the "grace period" to section 56(g)(4)(C)(i), we will negate the protection for depletable property placed in service on or before December 31, 1989, that Congress intended when it limited the application of section 56(g)(4)(F)(i) to property placed in service after that date.

We agree that by limiting the reach of section 56(g)(4)(F)(i) Congress provided some protection for taxpayers owning depletable property placed in service on or before December 31, 1989.  Section 613(a) allows a taxpayer to calculate depletion deductions using the percentage depletion method for regular tax purposes if that method results in a greater deduction than a deduction calculated under the cost depletion method.  However, for property placed in service after December 31, 1989, section 56(g)(4)(F)(i) offsets the benefit of the percentage depletion method when the AMT applies.  Unlike section 56(g)(4)(C)(i), section 56(g)(4)(F)(i) requires an ACE adjustment in any year for which the taxpayer's percentage depletion deduction exceeds the depletion deduction calculated under the cost depletion method, even if the percentage depletion deduction is less than the adjusted basis of the property.  Therefore, section 56(g)(4)(F)(i) may require an ACE adjustment in situations where section 56(g)(4)(C)(i) would not apply.  Because the limitation in section 56(g)(4)(F)(i) protects property placed

in service on or before December 31, 1989, from the ACE adjustment under section 56(g)(4)(F)(i), taxpayers owning such property do not need to make ACE adjustments for depletion unless they have already fully depleted the adjusted basis of the property.

While section 56(g)(4)(F)(i) allows a taxpayer to enjoy the temporary benefits of the percentage depletion method if it owns property placed in service on or before December 31, 1989, we do not see any indication that Congress intended this protection to extend to the permanent benefits of the percentage depletion method once the taxpayer has fully depleted the adjusted basis of the property.  Congress included in section 56(g)(4) both subparagraph (C)(i) and subparagraph (G), which was redesignated in 1990 but is materially the same as current subparagraph (F), in TRA.[5]  If Congress had wished to limit the application of

---

[5] Tax Reform Act of 1986, Pub. L. 99-514, sec. 701(a), 100 Stat. 2320; Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11301(b), 104 Stat. 1388-449.  The original sec. 56(g)(4)(G) provided:

> (G) Depletion.--The allowances for depletion with respect to any property placed in service in a taxable year beginning after 1989, shall be determined under whichever of the following methods yields deductions with a smaller present value:
>
> (i) cost depletion determined under section 611,
>
> or
>
> (ii) the method used for book purposes.

section 56(g)(4)(C)(i) to property placed in service after December 31, 1989, it could have included a limitation similar to the one found in section 56(g)(4)(F)(i). In the absence of clear evidence that Congress intended to protect depletable property placed in service on or before December 31, 1989, from all ACE adjustments related to depletion, we will not restrict the application of section 56(g)(4)(C)(i) to property placed in service after December 31, 1989.

V. Statutory Construction

Petitioner also argues that the rules of statutory construction show that section 56(g)(4)(C)(i) does not apply to depletion. Petitioner supports its argument with three theories, which we address in turn.

A. No Provision Should Be Superfluous

First, petitioner argues that courts must attempt to interpret statutory provisions so as not to render any other provisions in the same enactment superfluous. See Freytag v. Commissioner, 501 U.S. 868, 877 (1991). Petitioner argues that applying section 56(g)(4)(C)(i) to depletion renders the limitation of section 56(g)(4)(F)(i) to mines placed in service after December 31, 1989, superfluous.

As discussed above, subparagraphs (C)(i) and (F)(i) do serve different functions. While applying section 56(g)(4)(C)(i) to depletion renders the protection in section 56(g)(4)(F)(i)

superfluous for the owner of property that has fully depleted the adjusted basis of the property for cost depletion purposes, the limitation on the application of section 56(g)(4)(F)(i) is of significant benefit for taxpayers with property placed in service on or before December 31, 1989, that have not fully depleted the property's adjusted basis.  Petitioner enjoyed this benefit with respect to its Twin Creeks Mines.  See supra note 1.  Therefore, applying section 56(g)(4)(C)(i) to depletable property placed in service on or before December 31, 1989, does not render the limitation in section 56(g)(4)(F)(i) superfluous.

B.  The Particular Is Not Included in the General

Petitioner next argues that section 56(g)(4)(C)(i) does not apply to depletion because it is a general provision that includes what is already included in a more particular provision, section 56(g)(4)(F)(i).  In United States v. Chase, 135 U.S. 255, 260 (1890), the Supreme Court stated:

> where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment. * * *

While respondent agrees with this theory, he disagrees that it applies in this case.  Section 56(g)(4)(F)(i) is the "particular enactment" that deals specifically with depletion, but it applies only to property placed in service after December

31, 1989.  In the case of a taxpayer with property placed in service after December 31, 1989, whose depletion deduction exceeds the adjusted basis of the property for cost depletion purposes, petitioner is correct that subparagraphs (C)(i) and (F)(i) would both require the taxpayer to make the same ACE adjustment to the extent that the depletion deduction exceeds the adjusted basis of the property.  Respondent concedes that in such situations only the particular provision, section 56(g)(4)(F)(i), applies.  However, section 56(g)(4)(F)(i) does not apply to property placed in service on or before December 31, 1989. Therefore, only the general provision, section 56(g)(4)(C)(i), applies to such property, and there is no overlap between the particular and the general.  Because the Mesquite Mine was placed in service on or before December 31, 1989, it is subject only to the adjustment in section 56(g)(4)(C)(i).

C.  Ambiguities Must Be Resolved Against the Drafter

Petitioner next argues that ambiguous statutes must be resolved against the drafter, in this case the Government. However, this canon of statutory construction applies only where statutes are ambiguous.  Chickasaw Nation v. United States, 208 F.3d 871, 880 (10th Cir. 2000), affd. 534 U.S. 84 (2001); see also White v. United States, 305 U.S. 281, 292 (1938).  As discussed above, section 56(g)(4)(C)(i) applies to all property regardless of when it was placed in service, and it offsets the

permanent benefit of the percentage depletion method and other deductions that are not allowed when calculating earnings and profits.  Section 56(g)(4)(F)(i) applies only to depletable property that is placed in service after December 31, 1989, and it offsets the temporary and permanent benefits of the percentage depletion method.  We decline to read ambiguity into a statute that has only one meaning on its face.

VI.   Legislative History

Petitioner also argues that the legislative history of section 56(g)(4) clarifies any remaining ambiguities and confirms that section 56(g)(4)(C)(i) does not apply to depletion. Generally, the Court looks to legislative history only if the statute is unclear.  Blum v. Stenson, 465 U.S. 886, 896 (1984); Woodral v. Commissioner, 112 T.C. 19, 22 (1999).  However, we do not find section 56(g)(4) unclear.

Furthermore, the legislative history of section 56(g)(4) does not alter our understanding of the statute.  The House conference report for TRA explains that some adjustments will be made to ACE according to how those items are treated when calculating earnings and profits, and then goes on to say: "Additionally, adjusted current earnings requires different treatment of certain specifically listed items."  H. Conf. Rept. 99-841 (Vol. II), at II-275 (1986), 1986-3 C.B. (Vol. 4), 1, 275.

We agree that depletion is specifically listed in section 56(g)(4)(F)(i) and is therefore entitled to "different treatment". However, it does not necessarily follow that the general provisions in section 56(g)(4)(C)(i) do not apply to depletable property that is outside the scope of section 56(g)(4)(F)(i).

VII. The Statutory Scheme of Section 56

Petitioner next argues that applying section 56(g)(4)(C)(i) to depletion conflicts with the statutory scheme of section 56 because it: (1) Requires section 56(g)(4)(C)(i) to be read in isolation; (2) conflicts with the regulations; (3) is inconsistent with section 56(g)(4)(F)(i); and (4) is inconsistent with respondent's ACE worksheets.

Petitioner argues that respondent's position, that section 56(g)(4)(C)(i) applies to depletion, is plausible only if section 56(g)(4)(C)(i) is read in isolation; and if we are to read individual paragraphs in isolation, then section 56(g)(5)(B) eliminates all section 56(g)(4) adjustments.

We agree that phrases must be construed in the light of the overall purpose and structure of the whole statutory scheme. Dole v. United Steelworkers of Am., 494 U.S. 26, 35 (1990); Woodral v. Commissioner, supra at 22. However, we disagree that respondent's position is plausible only if section 56(g)(4)(C)(i) is read in isolation. Read by itself, section 56(g)(4)(C)(i)

applies to all property regardless of when it is placed in service and offsets the permanent benefit of the percentage depletion method and other deductions that are not allowed in any year when computing earnings and profits. Read in the context of section 56 as a whole, it applies only to depletion if a taxpayer owns depletable property with an adjusted basis smaller than the amount of the taxpayer's depletion deduction and the property is not subject to section 56(g)(4)(F)(i); i.e., was placed in service on or before December 31, 1989. While section 56(g)(4)(F)(i) may limit its application, section 56(g)(4)(C)(i) does not conflict with the rest of section 56 unless we adopt petitioner's position that section 56(g)(4)(F)(i) is the only section that governs ACE adjustments for depletion. We decline to create a conflict where there is none on the face of the statute.

Furthermore, contrary to petitioner's argument, section 56(g)(5)(B) does not eliminate all section 56(g)(4) adjustments. Section 56(g)(5)(B) provides:

(5) Other definitions.--For purposes of paragraph (4)--

\* \* \* \* \* \* \*

(B) Treatment of alternative minimum taxable income.--The treatment of any item for purposes of computing alternative minimum taxable income shall be determined without regard to this subsection.

While we agree that section 56(g)(5)(B) cannot be read in isolation without causing some confusion, it is clear from the statute as a whole that paragraph (5)(B) simply means that items used in making ACE adjustments should not be included in preadjustment AMTI as well. Otherwise, ACE would always equal preadjustment AMTI, and section 56(g)(1) would be meaningless.

Petitioner also argues that the structure of the regulations indicates that depletion is treated separately from other adjustments that are based on earnings and profits. Section 1.56(g)-1(d)(3), Income Tax Regs., contains a partial list of items not deductible in computing earnings and profits that does not mention depletion, and section 1.56(g)-1(j), Income Tax Regs., separately addresses depletion. Petitioner argues that this means that depletion is never subject to the general earnings and profits rule. However, the list in section 1.56(g)-1(d)(3), Income Tax Regs., is clearly a "partial list". Section 1.56(g)-1(d)(3), Income Tax Regs., provides:

> Items described in paragraph (d)(1) of this section [referring to items not deductible in computing earnings and profits] are not taken into account in computing earnings and profits (and thus are not deductible in computing adjusted current earnings) even if they are not identified in this paragraph (d)(3). * * *

Therefore, it does not prove that there cannot be an ACE adjustment related to depletion under the general earnings and profits rule, particularly because the regulations under section

312 specifically include deductions under the percentage depletion method as an item that is not allowable as a deduction when calculating earnings and profits. Sec. 1.312-6(c)(1), Income Tax Regs. Furthermore, the specific regulation that governs depletion, section 1.56(g)-1(j), Income Tax Regs., applies only to property placed in service after December 31, 1989.

While noting that implications drawn from subsequent legislation provide a hazardous basis for divining the intent of an earlier Congress, petitioner next argues that the parenthetical in section 56(g)(4)(F)(ii), which was added in 1992 by the Energy Policy Act of 1992, Pub. L. 102-486, sec. 1915(a)(2), 106 Stat. 3022, confirms that section 56(g)(4)(C)(i) does not apply to depletion. Section 56(g)(4)(F)(ii) provides:

> (ii) Exception for independent oil and gas producers and royalty owners.--In the case of any taxable year beginning after December 31, 1992, clause (i) (and subparagraph (C)(i)) shall not apply to any deduction for depletion computed in accordance with section 613A(c). [Emphasis added.]

Petitioner argues that the use of the parenthetical "(and subparagraph (C)(i))" indicates that the information inside the parentheses is redundant. Therefore, the fact that Congress chose to state in parentheses that section 56(g)(4)(C)(i) does not apply to independent oil and gas producers means that section 56(g)(4)(C)(i) would not have applied to those taxpayers in any event because section 56(g)(4)(C)(i) does not apply to depletion.

Respondent, by contrast, argues that if Congress had believed that the clause regarding section 56(g)(4)(C)(i) was redundant, it would not have included the clause.

Respondent's argument is more persuasive. It is a cardinal rule of statutory construction to give effect to every clause in a statute if possible, and this does not change simply because the clause is in parentheses. Market Co. v. Hoffman, 101 U.S. 112, 115-116 (1879). While it is inappropriate to give a parenthetical such weight that it contradicts the plain meaning of the rest of the statute, see, e.g., Chickasaw Nation v. United States, 534 U.S. at 89, respondent's argument is consistent with our interpretation of section 56(g)(4)(C)(i). Therefore, given the limited utility of using the views of a subsequent Congress to make inferences as to the intent of an earlier Congress, we will not interpret section 56(g)(4)(F)(ii) as meaning that section 56(g)(4)(C)(i) does not apply to depletion.

Petitioner also argues that the Commissioner's corporate AMT instructions for the last 20 years confirm that section 56(g)(4)(C)(i) does not apply to depletion. Petitioner points out that the Commissioner's "Adjusted Current Earnings Worksheet" does not list depletion among the ACE adjustments for items not deductible from earnings and profits.

Even if we were to find the Commissioner's worksheets to be misleading, these informal publications are not law. Zimmerman

v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979); Green v. Commissioner, 59 T.C. 456, 458 (1972).  However, we do not find the worksheets to be misleading because they have a place for "Other items" and point to the partial list in section 1.56(g)-1(d)(3), Income Tax Regs., indicating that the worksheets are not comprehensive.

In addition, the Commissioner published a technical advice memorandum in 1999 addressing another taxpayer's argument similar to petitioner's current argument that section 56(g)(4)(C)(i) does not apply to depletion for property placed in service on or before December 31, 1989.  Tech. Adv. Mem. 199910045 (Mar. 12, 1999).  The taxpayer's arguments were rejected for the same reasons respondent gives in this case.  Id.  Therefore, petitioner's argument that respondent is now changing his position after 20 years is without merit.

VIII.  Development Costs

Petitioner's final argument is that if section 56(g)(4)(C)(i) applies to depletion, then section 57(a)(1) is superfluous or at least duplicative.  Both section 56(g)(4)(C)(i) ACE adjustments and section 57(a)(1) preferences appear to require adjustments for the same amount:  the excess of the depletion deduction allowed under the percentage depletion method over the adjusted basis of the property.

Respondent concedes that there may be some overlap between the two sections and agrees with petitioner that under section 1.56(g)-1(a)(6)(ii), Income Tax Regs., the amount of the ACE adjustment is reduced by the amount taken into account under section 57(a)(1) to prevent duplication. However, respondent argues that sections 56(g)(4)(C)(i) and 57(a)(1) do not perfectly overlap. Respondent concedes that unamortized section 56(a)(2) costs are added to the adjusted basis of property when calculating section 57(a)(1) preferences but argues that they are not added to the adjusted basis of property when calculating section 56(g)(4)(C)(i) ACE adjustments. Therefore, the section 57(a)(1) preference will generally be less than the excess of the depletion deduction over the property's adjusted basis as calculated for purposes of section 56(g)(4)(C)(i), and the ACE adjustment will be the difference between this excess and the amount of the section 57(a)(1) preference.

Petitioner argues that if section 56(g)(4)(C)(i) applies to depletion, sections 56(g)(4)(C)(i) and 57(a)(1) perfectly overlap because unamortized section 56(a)(2) costs are included in the adjusted basis of depletable property for purposes of calculating both section 57(a)(1) preferences and section 56(g)(4)(C)(i) ACE adjustments.[6]

---

[6] Example 5 in the appendix to this Opinion illustrates the operation of secs. 56(a)(2), 57(a)(1), and 56(g)(4)(C)(i), and
(continued...)

To decide this issue, we must consider whether sections 56(g)(4)(C)(i) and 57(a)(1) share the same definitions of "property" and "adjusted basis".  Our analysis shows that they do and that section 56(a)(2) costs should not be included in the adjusted basis of property for purposes of calculating the adjustments under either section 56(g)(4)(C)(i) or 57(a)(1). However, because respondent conceded in this case that section 56(a)(2) costs may be included in the adjusted basis of property for purposes of calculating the section 57(a)(1) preference, we will allow petitioner to include section 56(a)(2) costs in the adjusted basis of the Mesquite Mine for the years at issue.

A.  Section 56(g)(4)(C)(i)

The ACE adjustment in section 56(g)(4)(C)(i) is the excess of the amount of the depletion deduction allowable under the percentage depletion method over the adjusted basis of the property.  See secs. 1.312-6(c)(1), 1.611-2(b)(2), Income Tax Regs.

Section 614(a) provides the definition of "property" for purposes of determining depletion deductions:

> SEC. 614 (a). General Rule.--For the purpose of computing the depletion allowance in the case of mines, wells, and other natural deposits, the term "property" means each separate interest owned by the taxpayer in

---

⁶(...continued)
the positions of the parties and the Court.

each mineral deposit in each separate tract or parcel of land.  [Emphasis added.]

Section 1.611-1(d), Income Tax Regs., further explains the difference between "property" and the entire "mineral enterprise":

> (1)  "Property" means--(i) in the case of minerals, each separate economic interest owned in each mineral deposit in each separate tract or parcel of land or an aggregation or combination of such mineral interests permitted under section 614(b), (c), (d), or (e); * * *

> *        *        *        *        *        *        *

> (3)  "Mineral enterprise" is the mineral deposit or deposits and improvements, if any, used in mining or in the production of oil and gas and only so much of the surface of the land as is necessary for purposes of mineral extraction.  The value of the mineral enterprise is the combined value of its component parts.

> (4)  "Mineral deposit" refers to minerals in place.  When a mineral enterprise is acquired as a unit, the cost of any interest in the mineral deposit or deposits is that proportion of the total cost of the mineral enterprise which the value of the interest in the deposit or deposits bears to the value of the entire enterprise at the time of its acquisition.

> (5)  "Minerals" includes ores of the metals, coal, oil, gas, and all other natural metallic and nonmetallic deposits, except minerals derived from sea water, the air, or from similar inexhaustible sources. It includes but is not limited to all of the minerals and other natural deposits subject to depletion based upon a percentage of gross income from the property under section 613 and the regulations thereunder.

> [Emphasis added.]

These definitions make it clear that for purposes of determining depletion deductions, "property" includes only the actual

minerals, not improvements or the surface land that are part of the entire "mineral enterprise". While the definition of "minerals" is not limited to property eligible for the depletion deduction under section 613 but also includes oil and gas, it is limited to natural deposits that are exhaustible; i.e., subject to depletion. Sec. 1.611-1(d)(5), Income Tax Regs. Therefore, "property" for purposes of determining the allowable deduction for cost depletion purposes does not include unamortized section 56(a)(2) costs because those are not costs paid for exhaustible minerals.

Neither the Code nor the regulations specifically state whether unamortized section 56(a)(2) costs are included in the adjusted basis used for cost depletion purposes. However, consistent with the definition of "property", the definition of "adjusted basis" for cost depletion purposes does not include unamortized section 56(a)(2) costs. Under section 612 the adjusted basis for purposes of determining depletion deductions is the adjusted basis provided in section 1011. Section 1.612-1, Income Tax Regs., provides:

> (b) Special rules. (1) The basis for cost depletion of mineral or timber property does not include:
>
> (i) Amounts recoverable through depreciation deductions, through deferred expenses, and through deductions other than depletion, * * *

Because unamortized section 56(a)(2) costs are not recovered through depletion deductions but are amortized under section 56(a)(2), they are not part of the adjusted basis for cost depletion purposes.

This is consistent with the treatment of development costs that are deferred under section 616(b) (section 616(b) costs) or disallowed and amortized under section 291(b) (section 291(b) costs). Like section 56(a)(2) costs, section 616(b) costs and section 291(b) costs are associated with depletable property but are deducted or amortized separately from the depletion deductions. Under section 616(c), section 616(b) costs are included in the adjusted basis of the mine under section 1016(a)(9) for most purposes but are disregarded for purposes of computing depletion deductions under section 611. Similarly, under section 291(b)(5) the portion of the adjusted basis of property attributable to section 291(b) costs is not taken into account for purposes of determining depletion deductions under section 611.

Petitioner argues that unamortized section 56(a)(2) costs should be included in the adjusted basis of depletable property for purposes of both sections 57(a)(1) and 56(g)(4)(C)(i) because section 56(a)(7)[7] specifically provides that unamortized section

_____

[7] Sec. 56(a)(7) was redesignated sec. 56(a)(6) in 1997. Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 403(a), 111
(continued...)

56(a)(2) costs are included in the adjusted basis of the property.  As in effect for the years at issue, section 56(a)(7) provides:

> (7) Adjusted basis.--<u>The adjusted basis of any property</u> to which paragraph (1) or (5) applies (or <u>with respect to which there are any expenditures to which paragraph (2)</u> or subsection (b)(2) <u>applies</u>) <u>shall be determined on the basis of the treatment prescribed in paragraph </u>(1), (<u>2</u>), or (5), or subsection (b)(2), whichever applies.  [Emphasis added.]

Because section 56(a)(2) provides that the section 56(a)(2) costs shall be capitalized and amortized ratably over a 10-year period, petitioner argues that section 56(a)(7) requires section 56(a)(2) costs to be included in the adjusted basis of depletable property for all AMT purposes.

Section 56(a)(7) does provide that development costs should be included in the basis of the property to which section 56(a)(2) applies.  However, development costs are incurred to improve <u>the entire mineral enterprise</u>, not to acquire the actual minerals in place.  See sec. 616(a).  Therefore, unamortized section 56(a)(2) costs are added to the adjusted basis of the mineral enterprise, but they are excluded from the adjusted basis of the mineral deposits for the purpose of determining depletion deductions.  See sec. 1.611-1(d)(3) through (5), Income Tax Regs.

---

[7](...continued)
Stat. 844.

On the basis of the foregoing discussion, we conclude that unamortized section 56(a)(2) costs are not included in the adjusted basis of property for purposes of calculating ACE adjustments under section 56(g)(4)(C)(i) for depletion.

B. Section 57(a)(1)

Section 57(a)(1) includes as a tax preference item:

(1) Depletion.--With respect to each property (as defined in section 614), the excess of the deduction for depletion allowable under section 611 for the taxable year over the adjusted basis of the property at the end of the taxable year (determined without regard to the depletion deduction for the taxable year). * * * [Emphasis added.]

Section 614(a) defines "property" as "each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land." (Emphasis added.) This is the definition of "property" that is used for purposes of cost depletion, which does not include unamortized section 56(a)(2) costs. Therefore, unamortized section 56(a)(2) costs are not part of the property used in determining the amount of the section 57(a)(1) preference. However, both petitioner and respondent take the position that, notwithstanding the narrow definition of "property" in section 614(a), unamortized section 56(a)(2) costs are included in the definition of "adjusted basis" for purposes of section 57(a)(1).

The regulations under section 57(a)(1) reference section 1016 for determination of the adjusted basis. Sec. 1.57-1(h)(3),

Income Tax Regs. Section 1016(a)(9) requires adjustments to basis for deferred section 616(b) costs, and section 1016(a)(20) requires adjustments to basis for unamortized development costs deferred under section 59(e). While section 1016 does not specifically refer to unamortized section 56(a)(2) costs, it does require adjustments for items properly chargeable to capital account and for depletion. Sec. 1016(a)(1) and (2).

The Commissioner has historically argued that deferred section 616 development costs are part of the adjusted basis used in calculating the section 57(a)(1) preference on the basis of the reference to section 1016 in section 1.57-1(h)(3), Income Tax Regs., and the references to deferred section 616 development costs in section 1016(a)(9) and (20). See Tech. Adv. Mem. 83-14-011 (Dec. 22, 1982); Tech. Adv. Mem. 97-47-002 (Nov. 21, 1997); Field Serv. Adv. Mem. 200021006 (May 25, 2000); cf. Field Serv. Adv. Mem. 0614 (June 30, 1993). While the pattern in section 1016 is to adjust basis for deferred section 616 development costs, respondent's argument ignores the fact that the definition of "property" in section 614(a), which is the definition of property used by section 57(a)(1), does not include the entire mineral enterprise but includes only minerals in place. Therefore, section 1016 may require unamortized section 56(a)(2) costs to be added to the basis of the mineral enterprise, but it

is only the adjusted basis of the minerals in place that is used to calculate the section 57(a)(1) preference.

While not directly on point, the Supreme Court's reasoning in United States v. Hill, 506 U.S. 546 (1993), persuades us that unamortized section 56(a)(2) costs are not included in the adjusted basis of depletable property for purposes of calculating section 57(a)(1) preferences. The issue in Hill was whether unrecovered costs of depreciable tangible items used to exploit the taxpayers' mines (unrecovered depreciation costs) should be added to the adjusted basis for purposes of section 57(a)(8), which was redesignated section 57(a)(1) in 1986 by TRA sec. 701(a), 100 Stat. 2320. Id. at 548. The Supreme Court reasoned that because taxpayers do not deduct unrecovered depreciation costs through depletion but instead deduct them through depreciation, the unrecovered depreciation costs are separate assets from the mineral deposits. Id. at 558-559. This is similar to the way that land is treated as a separate asset from a building that sits on it for purposes of calculating depreciation, but the land and the building have a combined adjusted basis for purposes of determining gain or loss when they are sold together. Id. The Supreme Court relied on the definitions of "property", "mineral deposit", "minerals in place", and "mineral enterprise" found in section 614(a) and section 1.611-1(d), Income Tax Regs., to decide that the term

"property" used in section 57(a)(8) includes only minerals in place and excludes improvements.  Id. at 553-560.  While noting the taxpayers' argument that section 1016 governs adjustments to basis, the Supreme Court concluded that "the computation of adjusted basis under § 1016 is wholly predicated on, rather than independent of, an understanding of 'mineral deposit' as distinct from 'improvements' within the meaning of the regulations under § 611."  Id. at 554.

The Supreme Court declined to extend its reasoning to costs deferred under section 616, particularly section 616(b) costs, because section 616(c) sets up a different system for section 616(b) costs.  Id. at 564 n.12.  However, the Supreme Court's findings, that (1) the term "property" as used in section 614(a) includes only minerals in place and (2) the definition of "property" is critical to defining the adjusted basis of the property, apply in the case before us.  Id. at 553-554.  Because unamortized section 56(a)(2) costs are not directly incurred to acquire minerals in place, they are not included in the definition of depletable property in section 614(a).  Under the reasoning in Hill, this means that they cannot be included in the adjusted basis of depletable property for purposes of calculating section 57(a)(1) preferences.

This interpretation is also supported by the legislative history of the revisions to the AMT in 1986.  The House

conference report states: "The excess over the adjusted basis of the depletable property is a preference." H. Conf. Rept. 99-841 (Vol. II), supra at II-268, 1986-3 C.B. (Vol. 4) at 268 (emphasis added). Because unamortized section 56(a)(2) costs are not depletable but are amortized over a 10-year period, this statement indicates that they should not be added to the adjusted basis of the property for purposes of section 57(a)(1).

Petitioner again argues that section 56(a)(7) defines "adjusted basis" for all AMT purposes and that that section provides that unamortized section 56(a)(2) costs are included in the basis of property. However, section 1.57-1(h)(3), Income Tax Regs., references section 1016, not section 56(a)(7), for the definition of "adjusted basis" for purposes of calculating section 57(a)(1) preferences. In any event, our analysis shows that the property referred to in section 56(a)(7) is the mineral enterprise, and only the adjusted basis of the mineral deposit is relevant for determining section 57(a)(1) preferences.

Our analysis is inconsistent with the Commissioner's historical and current position that unamortized section 56(a)(2) costs may be included in the adjusted basis of depletable property for purposes of calculating section 57(a)(1) preferences. However, because respondent has conceded this issue as it relates to the Mesquite Mine, the parties should nevertheless apply respondent's concession in the Rule 155

computation that the parties agree will be necessary after the remaining issue has been resolved.

IX.  Conclusion

On the basis of our analysis, unamortized section 56(a)(2) costs are not included in the adjusted basis of depletable property when calculating the amount of section 56(g)(4)(C)(i) ACE adjustments or section 57(a)(1) preferences.  However, because respondent conceded that unamortized section 56(a)(2) costs may be included in the adjusted basis of the Mesquite Mine for purposes of calculating section 57(a)(1) preferences, petitioner may include such costs.  Therefore, petitioner is not required to make adjustments to its calculation of section 57(a)(1) preferences for the Mesquite Mine for the years at issue and should compute its AMT consistent with our holding that section 56(g)(4)(C)(i) applies to depletion to the extent that amounts treated as section 56(g)(4)(C)(i) ACE adjustments are not also treated as section 57(a)(1) preferences.

To reflect the foregoing,

An appropriate order will be issued.

APPENDIX

Example 1:  The Operation of Section 56(g)(4)(C)(i) and (F)(i)

Taxpayer owns a mine that was placed in service after December 31, 1989.  The mine has an adjusted basis of $100.  The deduction allowed under the percentage depletion method is $25, and the deduction allowed under the cost depletion method is $20. Taxpayer did not incur any development costs under section 616(a) that it is required to capitalize and amortize under section 56(a)(2).  In order to demonstrate the difference between section 56(g)(4)(C)(i) and (F)(i), in Examples 1-4 we assume that section 57(a)(1) does not apply.

Under section 56(g)(4)(F)(i), Taxpayer must make an ACE adjustment of $5, which is the difference between the deduction allowed under the percentage depletion method ($25) and the deduction allowed under the cost depletion method ($20).

Taxpayer does not make an ACE adjustment under section 56(g)(4)(C)(i) because Taxpayer's deduction for depletion ($25) is less than the mine's adjusted basis ($100), so it does not exceed the amount allowable as a deduction in any tax year. Taxpayer will eventually be allowed to deduct $25 under the cost depletion method.

Example 2:

Same as Example 1, except that Taxpayer's mine was placed in service on or before December 31, 1989.

Taxpayer is not required to make any ACE adjustments for depletion.  Section 56(g)(4)(F)(i) does not apply to property placed in service on or before December 31, 1989, and as discussed in Example 1, Taxpayer is not required to make an adjustment under section 56(g)(4)(C)(i).

Example 3:

Same as Example 1, except that Taxpayer's mine has an adjusted basis of zero.  Therefore, no deduction is allowed under the cost depletion method.

Taxpayer must make an ACE adjustment under section 56(g)(4)(F)(i) of $25, which is the difference between the deduction allowed under the percentage depletion method ($25) and the deduction allowed under the cost depletion method (zero).

Taxpayer is not required to make an ACE adjustment under section 56(g)(4)(C)(i).  Because Taxpayer is required to take into account the excess of the deduction allowed under the percentage depletion method over the amount allowed in any year ($25) in calculating its ACE, Taxpayer is no longer claiming a

deduction for an item that would not be deductible for purposes of computing earnings and profits.

Example 4:

      Same as Example 3, except that Taxpayer's mine was placed in service on or before December 31, 1989.
      Taxpayer is not required to make an ACE adjustment under section 56(g)(4)(F)(i) because that section does not apply to property placed in service on or before December 31, 1989.
      Petitioner argues that section 56(g)(4)(C)(i) does not require Taxpayer to make an ACE adjustment for depletion because only section 56(g)(4)(F)(i) applies to depletion.
      Respondent argues that Taxpayer is required to make an adjustment under section 56(g)(4)(C)(i) of $25, which is the difference between the deduction taken under the percentage depletion method ($25) and the amount that would be allowable in any year under the cost depletion method (zero).  Because Taxpayer did not make an ACE adjustment for this amount under section 56(g)(4)(F)(i), nothing prevents section 56(g)(4)(C)(i) from applying.
      We agree with respondent that section 56(g)(4)(F)(i) does not prevent section 56(g)(4)(C)(i) from applying to depletion.
      However, as discussed in the Opinion, the $25 difference between the amount allowable under the percentage depletion method and the adjusted basis of the mine will be taken into account under section 57(a)(1).  Therefore, section 56(g)(4)(C)(i) will be preempted by section 57(a)(1) just as it was preempted by section 56(g)(4)(C)(i) in Example 3.

Example 5:   The Treatment of Section 56(a)(2) Costs Under
             Sections 57(a)(1) and 56(g)(4)(C)(i)

      Taxpayer owns property that was placed in service on or before December 31, 1989.  The property has an adjusted basis for cost depletion purposes(cost basis) of zero, excluding unamortized section 56(a)(2) costs.  Taxpayer has unamortized section 56(a)(2) costs of $20.  Taxpayer is allowed a deduction of $25 under the percentage depletion method.
      Respondent and petitioner both argue that Taxpayer's section 57(a)(1) preference equals $5:

```
 $25 (depletion deduction)
-  0 (cost basis)
- 20 (unamortized section 56(a)(2) costs)
   5 (section 57(a)(1) preference)
```

Respondent argues that Taxpayer's section 56(g)(4)(C)(i) ACE adjustment equals $20:

    $25 (depletion deduction)
    - 0 (cost basis)
    - 5 (amount taken into account under section 57(a)(1))
     20 (section 56(g)(4)(C)(i) ACE adjustment)

Respondent argues that the unamortized section 56(a)(2) costs are not included in basis for purposes of section 56(g)(4)(C)(i).

Petitioner argues that Taxpayer's section 56(g)(4)(C)(i) ACE adjustment, if it applies to depletion, would equal zero because unamortized section 56(a)(2) costs are taken into account:

     $25 (depletion deduction)
    -  0 (cost basis)
    - 20 (unamortized section 56(a)(2) costs)
    -  5 (amount taken into account under section 57(a)(1))
       0 (section 56(g)(4)(C)(i) ACE adjustment)

Under the Court's analysis, Taxpayer's section 57(a)(1) preference should equal $25 because unamortized section 56(a)(2) costs are not taken into account in either calculation:

    $25 (depletion deduction)
    - 0 (cost basis)
     25 (section 57(a)(1) preference)

Therefore, Taxpayer's section 56(g)(4)(C)(i) ACE adjustment would equal zero:

     $25 (depletion deduction)
    -  0 (cost basis)
    - 25 (amount taken into account under section 57(a)(1))
       0 (section 56(g)(4)(C)(i) ACE adjustment)

However, because respondent conceded that petitioner may include section 56(a)(2) costs in the Mesquite Mine's adjusted basis for purposes of determining the section 57(a)(1) preferences attributable to that mine, in their Rule 155 computations the parties should follow respondent's position (the section 57(a)(1) preference would be $5 and the section 56(g)(4)(C)(i) ACE adjustment would be $20 in this example).